KENMORE CONSTRUCTION COMPANY, APPELLEE, *v.* MARYLAND CASUALTY COMPANY, APPELLANT.

(No. 7094—Decided June 13, 1973.)

230

*Messrs. Buckingham, Doolittle & Burroughs* and *Mr. Timothy F. Scanlon,* for appellee.

*Messrs. Slabaugh, Walker, Pflueger, Roderick & Myers,* for appellant.

MAHONEY, J. On July 4, 1969, a cement block building owned by the plaintiff (appellee), Kenmore Construction Company (hereinafter called Kenmore), was totally destroyed by a windstorm. Sixteen days earlier, on June 18, 1969, William Scala (hereinafter called Scala), president of Kenmore, telephoned William Burkhardt, Jr. (hereinafter called Burkhardt), president of the Burkhardt Insurance Agency. The insurance agency had a general agency contract with defendant (appellant), Maryland Casualty Company (hereinafter called Maryland).

In that telephone conversation, Scala informed Burkhardt that Kenmore was purchasing property at 3200 Henninger Road, in Cleveland, Ohio, and was obtaining a $35,-000 mortgage loan from the First National Bank of Akron (hereinafter called Bank). He requested Burkhardt to issue a $35,000 fire and extended coverage insurance policy. As a general agent for Maryland, Burkhardt had authority to orally bind Maryland to contracts of insurance, and to issue the policies. Burkhardt told Scala that Kenmore was covered, and Maryland was bound. Burkhardt also informed Donald F. Shumaker (an officer of the Bank, who was the closing officer), when Shumaker called him, that there was coverage and he would send the binder. Neither the binder nor the policy has been received by the Bank.

Burkhardt, at the time of the conversation, filled out a written order form, and gave it to an office girl, who prepared a standard form of Maryland Fire and Extended Coverage policy, except for the rates, which she requested from the Cleveland office of Maryland. The rates were never received during the year 1969; neither the policy nor the binder was ever delivered to Kenmore.

From June 18, 1969, to the time of the loss on July 4,

1969, the building was never inspected, appraised or rated, and its value was never determined. After the total loss, the actual cash value of the building was appraised at $6,880.

Kenmore filed suit for the $35,000, claiming, in substance, that R. C. 3929.25 was applicable (commonly referred to as the "valued policy statute"). Maryland answered, admitting the oral binder, but denying that such binder constitutes a contract of valued policy insurance, or that R. C. 3929.25 is applicable. Maryland asserted that it was liable only for the appraisal value of $6,880.

The case was submitted to the trial court upon the stipulated facts, and the depositions of Burkhardt and Shumaker. The stipulation included the facts that "wind was a risk insured against under the oral binder issued by Burkhardt to Kenmore Construction Company," and that Kenmore had "complied with the notice and proof of loss provisions of the standard fire and extended coverage insurance policy." The parties further stipulated that a judgment should be entered in accordance with the trial court's finding of the applicability of R. C. 3929.25.

R. C. 3929.25 provides:

"A person, company, or association insuring any building or structure against loss or damage by fire or lightning, by renewal of a policy, shall have such building or structure examined by his or its agent, and a full description thereof made, and its insurable value fixed, by said agent. In the absence of any change increasing the risk without the consent of the insurers, and. in the absence of intentional fraud on the part of the insured, in the case of total loss the whole amount mentioned in the policy or renewal, upon which the insurer received a premium, shall be paid.

"The cellar and foundation walls shall not be considered a part of such building or structure in settling losses, despite any contrary provisions in the application or policy."

The trial court found for the plaintiff, Kenmore, stating, in its written finding, that:

"The facts in this case as I find them to be are that:

"1. The insurer agreed to insure the building in question for $35,000 against loss by fire or lightning.

"2. The building was totally destroyed.

"As stated in the plaintiff's brief: 'The valued policy statute is applicable to *all* policies which insure against loss * * * by fire or lightning.'

"This policy provided that insurance. The statute does not state that the damage or loss must be by fire or lightning, but only if the policy insures against loss by fire and lightning. * * *"

From that judgment, the defendant, Maryland, has appealed, claiming that the trial court committed prejudicial error (1)"in determining that Ohio's valued policy statute (Ohio Revised Code 3929.25) applied to the loss in question"; and (2) "in entering judgment in favor of the plaintiff * * * for $35,000, when, as a matter of law, judgment should have been entered in the sum of $6,880."

Maryland's argument is two-fold:

1. R. C. 3929.25 does not apply to a preliminary oral binder.

2. R. C. 3929.25 does not apply to a windstorm total loss.

Kenmore urges, of course, that R. C. 3929.25 is applicable, and that an oral binder is, in fact, a contract of insurance. Kenmore points out also that the actual policy, according to Burkhardt's deposition, was issued by Maryland to Burkhardt on May 20, 1970, but was never delivered for want of a correct address for the insured property. Kenmore was never billed for the premium.

We will consider, first, the applicability of R. C. 3929.25 to a windstorm total loss.

Kenmore and Maryland agree that the first phrase of R. C. 3929.25, "a person * * * insuring any building * * * against loss or damage by fire or lighting * * *," has reference to certain risks or perils. However, when interpreting the last phrase of the first paragraph, "*in the case of total loss the whole amount mentioned * * * shall be paid,*" the parties differ. Kenmore urges the finding of the trial court that the "*total loss*" means any loss, regard-

less of the cause, so long as the perils of fire and lightning were insured. Maryland urges that the "total loss" means only loss caused by fire or lightning. (Emphasis supplied.)

Kenmore then replies that the words "fire or lightning" are simply descriptive of the types of insurance policies to which the statute applies. Kenmore believes that the statute was never intended to be limited in application to two risks, as such an interpretation would defeat the purpose of the statute; otherwise, in a single policy a loss by fire could provide a different amount of recovery than a loss by windstorm.

We concur with the interpretation of Maryland. When the statute is considered in its entirety, we can conclude only that the words "total loss" relate back to the perils, i. e., "fire or lightning." They are similar types of losses, and different from windstorm, hail, tornado, or cyclone. The word "risk," as used in the first phrase of the second sentence, i. e., "in the absence of any change increasing the risk * * *" must obviously refer back to the type of risk that was previously mentioned in the preceding sentence, to wit: "fire or lightning." It did not mean any other risk. We agree with Kenmore that our interpretation could provide for different methods of computing recovery depending on the type of loss. (Emphasis supplied.)

It is, therefore, incumbent upon us to determine the legislative intent when the statute was passed and, for that reason, we will review some legislative history. R. C. 3929.-25 was adopted first in 1879 (76 Ohio Laws 26), and has survived in essentially the same form as R. S. 3643, then G. C. 9583 (except for some minor changes which are not material to the issues here).

In 1872, the legislature passed an act to regulate companies doing an insurance business in Ohio (69 Ohio Laws 140). This act dealt with stock companies, as well as mutual companies. Section 8 of Chapter I of that act provided that:

"It shall be lawful for any company organized under this chapter—First, to insure houses, buildings, and all other kinds of property, against loss or damage by fire * * *.

Second, to make insurance on the health of individuals * * *. Third, to insure the fidelity of persons * * *. Fourth, to receive on deposit and insure the safe keeping of books, papers, money * * *. Provided, that no company shall be organized to issue policies of insurance for more than one of the above four mentioned purposes, and no company that shall have been organized for either one of said purposes, shall issue policies of insurance for any other * * *."

It is to be noted that the "purpose" sections do not include windstorm, tornado, etc. Section 8 was amended in 1874 (71 Ohio Laws 65) to include lightning in the "first" purpose.

That act of 1872, as amended, to regulate insurance companies, became R. S. 3641, then G. C. 9510, and it was succeeded by the present day R. C. 3929.01. That statute was periodically amended after 1879, as it related to the general powers of insurance companies, other than life, so that their fields were broadened to include tornadoes, accidents, performance bonds, livestock, title guaranty, etc., with the provision limiting insurance companies to one purpose being repealed in 1955.

R. S. 3641(a) was passed in 1883 (80 Ohio Laws 171), providing that companies which insured against fire may insure against lightning. In 1884, companies insuring against loss or damage by fire were given authority to insure against loss or damage by lightning and tornadoes (81 Ohio Laws 93). In 1891, it was extended to explosion from gas, dynamite, etc., and in 1911, to theft and damage to autos, etc., and water damage by pipe leakage, etc. (102 Ohio Laws 359). Then, in 1929, G. C. 9556 was amended (113 Ohio Laws 54) to include all loss or damage from windstorm, etc. All of which is now merged in R. C. 3925.-34.

There was an act passed in 1857 (54 Ohio Laws 114), covering the incorporation of mutual fire insurance companies, which was amended in 1865 (62 Ohio Laws 187) to provide authority for mutual fire companies " * * * *to make all kinds of insurance on houses, buildings and their contents * * * whether the same shall happen by accident, lightning, wind, or any other means * * *."*

This statute, however, was repealed by the acts of 1867 (64 Ohio Laws 157), and of 1872 (69 Ohio Laws 140), and mutual companies were governed by the "purpose" clauses provided therein. Additionally, mutual protective associations were authorized, in 1877 (74 Ohio Laws 66), as a protection against fire, and, in 1885 (82 Ohio Laws 71), their authority was extended to mutual protection against "cyclones, tornadoes or windstorms."

During the existence of all of these statutory amendments, the legislature did not change the language of R. C. 3929.25. It seems certain that the legislature did not have losses from windstorms, cyclones, or other causes in mind when it referred to "total loss" in the original act of 1879, as there were no companies authorized to insure against the peril of windstorm.

Kenmore's argument concerning different computations of recovery for "total loss" could occur also if the insured had his fire insurance with one company and his windstorm insurance with another; likewise, if he carried only windstorm and no fire insurance. These arguments for uniformity are not sufficient cause for us to broaden the legislative intent when the legislature has had many opportunities to do so, but has not.

We conclude that R. C. 3929.25 does not apply to windstorm total losses; therefore, it is not necessary for us to determine the question of whether an oral binder of fire insurance is subject to R. C. 3929.25.

The judgment of the trial court is reversed, and a final judgment is rendered in favor of Kenmore Construction Company for the sum of $6,880.

*Judgment reversed.*

VICTOR, J., concurs.
BRENNEMAN, P. J., dissents.