**Bob BENNETT and Donna Bennett, Appellees,**

v.

**ALLSTATE INSURANCE COMPANY, Appellant.**

No. 89–1028.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1989.

Decided Nov. 13, 1989.

Beverly A. Rowlett, Little Rock, Ark., for appellant.

Bill W. Bristow, Jonesboro, Ark., for appellees.

Before JOHN R. GIBSON, Circuit Judge, ROSS, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

ROSS, Senior Circuit Judge.

Allstate Insurance Company (Allstate) appeals from the district court's judgment entered upon jury interrogatories, awarding insurance proceeds to Bob Bennett and his wife Donna Bennett (Bennett) in this diversity action. We reverse and remand.

## I.

On September 2, 1986, Bennett purchased a single family dwelling in Jonesboro, Arkansas, for $30,000. He made application to Allstate for insurance over a year later on October 1, 1987. Allstate agent Gene Griffey viewed the house, and it was noted on the policy that a "complete renovation" was "in process." The agent testified and noted on the policy that Bennett stated the renovation was only cosmetic (including floor and wall coverings, and possibly electrical and plumbing work), not structural, and that someone would be living in the house within thirty days. Bennett testified to the contrary regarding someone living in the house within thirty days. The landlords package policy's limit was $40,000.

Thereafter Bennett had begun to tear out the kitchen floor for replacement when he realized that the entire floor of the house was infested with termites. He removed all floors down to the earth, including the floor joists. He also removed all interior walls, ceiling joists, plumbing, and window frames. A neighbor testified that when he entered the house in November, it was "completely gutted," and that the roof began to sag shortly thereafter. The house leaned after a windstorm on December 14, 1987. Bennett reported this to Allstate and filed a claim. He was advised to brace the house. An Allstate agent inspected the house and testified that all interior walls, ceiling joists, and vertical and horizontal supports were removed; "[t]he building was destroyed." On January 3, 1988, Bennett's claim was denied based on the policy's following exclusion:

Losses We Do Not Cover:

We do not cover loss or damage to the property described in the Building Protection coverage resulting directly or indirectly from: ...

13. An increase in hazard, if increased by any means within the control or knowledge of an insured person.

On January 6 or 7, 1988, a heavy snowfall occurred, leaving some ten inches of snow on the roof of the house. Acting on the advice of the city building inspector about the hazardous condition of the structure after the snowfall, Bennett tore it down. Bennett sold the land for $15,000. Allstate's motion for a directed verdict at the close of the Bennetts' case on the

grounds of the increase of hazard provision was overruled.

Another policy provision provided that in the event of a loss Allstate could:

a) repair, rebuild or replace the damaged or destroyed property ...; or

b) take all or part of the covered property at the agreed or appraised value.

....

If you decide not to repair or replace the damaged property, settlement will be on an actual cash value basis, not to exceed the limit of liability applicable to the damaged property.

David Cossey, a real estate developer and builder, testified that the actual cash value of the building, both before and after the wind damage on December 14, 1987, was $5,000 to $7,000. During closing arguments the district court precluded defense counsel from arguing actual cash value as the proper measure of damages.

The district court made a factual finding that the changes Bennett caused to be made in the house substantially increased the risk of hazard, but instructed the jury, over Allstate's objection, that the increase of hazard provision applied only if Bennett knew the changes he was making were substantially increasing the risk that the house would be damaged by wind or snow accumulation. The court held as a matter of law that an exclusion for an increase in hazard simply within the control of an insured person would be against the public policy of the State of Arkansas and unenforceable. Interrogatory No. 1 stated: "Did the plaintiff, Bob Bennett, know that the changes he caused to be made in the interior of the house substantially increased the risk or hazard that the building would be damaged or destroyed by wind or snow accumulation?" The jury answered in the negative. It also assessed the actual cash value of the property at the time of the loss at $7,500.

The court, however, awarded $40,000 in proceeds, the face value of the policy, as well as penalty interest and attorneys' fees. It reasoned that the full value was warranted under the policy's provision explaining replacement cost. The court deter-

mined that Bennett chose to repair the damage to the house after the December windstorm and before the snowstorm, but was prevented from doing so by Allstate's rejection of his claim. According to the policy, Allstate could settle the claim by paying the actual cash value of the building only if the insured chose not to repair or replace the damaged property. The court alternatively held that the policy was a valued policy, not an open one, and that the Arkansas Valued Policy Statute, Ark.Code Ann. § 23–88–101 (1987) (providing insured full stated value of a "fire insurance policy" if property totally lost "by fire"), applied. The court relied on *Phoenix Assurance Co. v. Loetscher*, 215 Ark. 23, 219 S.W.2d 629 (1949), where a valued policy amount controlled even though no fire was involved in a total loss by lightning of a building under construction.

Allstate appeals, arguing that the district court erred in: (1) failing to enter judgment or direct a verdict for Allstate on the grounds of the increase of hazard exclusionary provision, or in failing to properly submit the exclusion issue to the jury; and (2) awarding the limit of liability under the policy. Allstate further argues that if a new trial is ordered the district court erred in (3) finding that the "status" of the house did not change before the loss; and (4) refusing to allow defense counsel to argue the actual cash value of the property in his closing argument.

II.

The increase of hazard exclusion has been held valid and enforceable in Arkansas. *Orient Ins. Co. v. Cox*, 218 Ark. 804, 238 S.W.2d 757 (1951).

"[The increase of hazard provision] contemplates an alteration in the situation or circumstances affecting the risk which would materially and substantially enhance the hazard, *as viewed by a person of ordinary intelligence, care, and diligence.* The provision does not prohibit the owner from exercising the usual and ordinary acts of ownership, or exempt the insurer from liability resulting from the carelessness or negligence of the in-

sured, unless it amounts to fraud or wilful misconduct, or unless it is so continuous or of such a nature as to increase the hazard more or less permanently. While there is authority to the effect that the provision is broken by a temporary increase of risk which is caused by the manner of using the premises and which is not a casual, inadvertent, or inevitable thing, the general rule may be said to be that the provision applies to changes of a permanent nature, and not to mere temporary changes in the use of the premises."

*Orient, supra,* 238 S.W.2d at 761 (quoting 29 Am.Jur., *Insurance,* § 677) (emphasis supplied).

■ The same standards apply to granting a judgment notwithstanding the verdict and a directed verdict. *Armstrong v. Republic Realty Mortgage Corp.,* 631 F.2d 1344, 1351 (8th Cir.1980). The record discloses that Allstate made a motion for a directed verdict at the close of the Bennetts' case. Because Allstate had the burden of proof in affirmatively defending on the basis of the exclusion, the district court did not err in refusing to grant a directed verdict, viewing the evidence in the light most favorable to the Bennetts. Nor did the district court err in failing to enter a judgment for Allstate at the close of the evidence because the question of increase of risk or hazard is normally an issue for the jury. *Orient, supra,* 238 S.W.2d at 762.

■ On appellate review, we give deference to, but are not bound by, a federal district court's interpretation of state law in the state where the court sits. *Cowens v. Siemens–Elema AB,* 837 F.2d 817, 823 (8th Cir.1988). We will reverse the district court's interpretation only if the court has misapplied the state law, *id.,* or the court's interpretation is " 'fundamentally deficient in analysis, without a reasonable basis, or contrary to a reported state-court opinion.' " *Economy Fire & Casualty Co. v. Tri–State Ins. Co.,* 827 F.2d 373, 375 (8th Cir.1987).

■ Allstate argues that the district court incorrectly instructed the jury that

"Bob Bennett," rather than a reasonably prudent person, must have realized he substantially increased the risk of hazard. Allstate took exception to the interrogatory before it was submitted to the jury. Under Arkansas authority, the interrogatory requiring subjective knowledge was clearly incorrect. *See Orient, supra,* 238 S.W.2d at 761 ("[increase of hazard provision] contemplates an alteration in the situation … which would materially and substantially enhance the hazard, as viewed by a person of ordinary intelligence, care, and diligence"). *See also Patriotic Ins. Co. v. Franciscus,* 55 F.2d 844, 847 (8th Cir.1932) (circumstances can be such as to charge landlord insured with knowledge of increased hazard if in exercise of ordinary care and diligence, such knowledge would have resulted); *Plaza Equities Corp. v. Aetna Casualty & Surety Co.,* 372 F.Supp. 1325, 1331 (S.D.N.Y.1974) ("increase of hazard occurs only when the insured performs acts which are reasonably calculated to increase the risk and which he knows or should know will increase the risk"). *But see American Mfrs. Mut. Ins. Co. v. Wilson–Keith & Co.* 247 F.2d 249, 259–261 (8th Cir.1957) (construing "control" to mean "understanding intelligent control directed by knowledge;" approving instruction that " 'knowledge' had no technical meaning and meant 'to know' " but disagreeing with "knew or … should have known" language under Missouri law; and expressing no opinion on the propriety of splitting the clause into two interrogatories: one relating to control, one to knowledge).

We believe that the district court's interpretation of Arkansas law was incorrect and that the interrogatory submitted to the jury contravened Arkansas authority. Accordingly, we remand for a new trial with instructions that the issue of knowledge be submitted to the jury under the objective person standard. If the jury determines that "a person of ordinary intelligence, care, and diligence" should have known that the alterations would result in an increase in hazard, the case should be dismissed.

### III.

■ The district court awarded the full $40,000 face value of the policy upon the jury's special interrogatories. It reasoned in part that the policy was a valued policy and that Arkansas' valued policy statute applied.[1] Should the jury find for Bennett on remand, we believe the Arkansas valued policy statute does not apply.

Assuming without deciding that the policy at issue is a valued policy and not an open policy, we note that the statute on its face applies only to fire losses. "The valued policy statute applies only to 'total loss by fire.' An insured is not entitled to the face amount of the policy when his mobile home is totally destroyed by windstorm." 15 *Couch on Insurance 2d* § 54:111 (rev. ed. 1983) (citing *McNeely v. South Carolina Farm Bureau Mut. Ins. Co.*, 259 S.C. 39, 190 S.E.2d 499 (1972); *Kenmore Constr. Co. v. Maryland Casualty Co.*, 46 Ohio App.2d 229, 348 N.E.2d 374 (1973)). The clear, unambiguous language of the statute needs no interpretation.

The decision of *Phoenix Assurance Co. v. Loetscher, supra,* 219 S.W.2d at 632, relied upon by the district court, did not expressly discuss the issue of the valued policy statute or give reasons for application of the statute. We are persuaded that the *Phoenix* case was merely decided in accordance with the common parlance of that time which viewed fire insurance as including lightning protection. *See* Comment, *Problems Arising Under Valued Policy Insurance Statutes,* 12 Ark.L.Rev. 184, 187 (1958). *See also Kenmore Constr. Co. v. Maryland Casualty Co., supra,* 348 N.E.2d at 377 (perils of fire and lightning "are similar types of losses, and different from windstorm, hail, tornado, or cyclone").

### IV.

■ Evidence of actual cash value of the property was introduced via Bennett's $30,000 purchase price paid, and $15,000 he received when he sold the land. Expert opinion was also received that the actual cash value was $5,000 to $7,000. The district court prevented defense counsel from arguing these figures to the jury. Allstate urges that under Arkansas Model Jury Instruction No. 2222, the evidence was relevant because the measure of damages for permanent damage to real property is the difference between the fair market value (actual cash value) of the land and its improvements immediately before and immediately after the occurrence.

Bennett responds that the actual cash value argument would be difficult for the jury because land was involved in addition to the house. We disagree, and instruct that counsel be allowed to argue these figures, already in evidence, in order that the jury may determine the valuation of the structure's actual worth at the time of the loss which was, in our opinion, the correct measure of damages.[2]

### V.

Accordingly, the judgment of the district court is reversed and the case remanded for a new trial with instructions hereinbefore set forth.

---

1. Ark.Code Ann. § 23–88–101 (1987) provides in part:
   (a) A *fire* insurance policy, in case of a total loss *by fire* of the property insured, shall be held and considered to be a liquidated demand and against the company taking the risk, for the full amount stated in the policy, or the full amount upon which the company charges, collects, or receives a premium. (Emphasis added).

2. We do not agree with the conclusion of the trial court that Allstate's refusal of the claim filed on or about December 14th necessarily forced Bennett to decide not to repair or replace the house. The written denial of the claim was dated January 3, 1988, less than three weeks after the claim was filed. However, Bennett testified he didn't receive it until January 6th. (Tr. 31) The snowstorm occurred on that day and on January 7th. After the snowstorm it was obvious that the building had to be torn down. The decision not to repair or replace the damaged property, which permitted Allstate to make settlement on an actual cash value basis, had to be a direct result of the snowstorm on January 6th and 7th.