## Lyle DEWS *v.* HALLIBURTON INDUSTRIES, INC., et al.

85-172 708 S.W.2d 67

Supreme Court of Arkansas
Opinion delivered April 21, 1986
[Rehearing denied June 2, 1986.*]

* Purtle, J., not participating.

*Anderson, Crumpler, Bell & Malock, P.A.*, for appellant.

*Steve R. Crane*, for appellee Halliburton Industries, Inc.

*Jackson, Jackson, Loving & Gutman*, by: *Gary D. Jackson*; and *David L. Beatty*, for appellee Analytical Logging, Inc.

*Williams & Kemp*, by: *Karlton H. Kemp, Jr.*, for appellee KAT Wireless Services, Inc.

*Smith, Stroud, McClerkin, Dunn & Nutter*, by: *Hayes C. McClerkin* and *Bruce Lorenzen*, for appellee Hall Engineering, Inc. and Mosley Well Service.

*David W. Talley, Jr.*, for appellee Dresser Industries, Inc.

*Unger & Hughes*, by: *John W. Unger, Jr.*, for appellee Global Industries, Inc.

JACK HOLT, JR., Chief Justice. At issue in this case is who is to pay eleven different companies approximately half of a million dollars for work performed while drilling an oil well. The chancellor held the appellant, Lyle Dews, and Bruce Massey are responsible for the debt. We agree. It is from that judgment that this appeal is brought. Our jurisdiction is pursuant to Sup. Ct. R. 29(1)(c) and (d).

Crystal Oil Co. owned certain leases covering lands in the southeast quarter and the north half of the southwest quarter, section 10, township 20S, range 25W, in Lafayette County, Arkansas. Crystal executed a farmout agreement of these leases with Dews on May 4, 1982. The terms of the farmout required Dews, at his expense, to drill a test well by May 15, 1982 and continue drilling to a depth sufficient to test the Cotton Valley Formation. If production was obtained, Crystal was required to assign Dews an interest in the leasehold estate. Crystal reserved an overriding royalty interest. If the first well was drilled, the agreement gave Dews the option to drill additional wells on the remaining acreage. The agreement was extended until July 15, 1982. Dews paid no consideration for this farmout.

Dews then entered into an agreement with Bruce Massey whereby Massey would pay Dews $50,000 in exchange for Dews assigning to Massey his right to the leasehold estate under the Crystal-Dews agreement and subject to the terms of the Crystal-Dews agreement. Dews reserved 5% of the leasehold estate as an overriding royalty interest. Massey agreed in return to cause the well to be drilled as required by the Crystal-Dews farmout agreement.

Drilling operations began prior to July 15, 1982 and the well was completed as a producing well on November 14, 1982. All of the claimants in this case were hired by Massey to supply labor or material for drilling the well.

As a result of the drilling and completion of the well, Dews received his assignment of leases from Crystal. Dews never assigned his right to Massey pursuant to their agreement, because Massey never paid Dews the $50,000 in a manner satisfactory to Dews.

Some of the various companies responsible for drilling the

well filed suit against Massey in an attempt to collect the money owed to them. Dews was brought in as a party defendant and Dews then cross-claimed against all of the companies.

The chancellor found that Massey did not appear and defend and was therefore in default, and that Massey and Dews were jointly and severally liable for the companies' claims. Each company was awarded a money judgment, for a total of $519,397.60 plus interest. In addition, all but one of the companies were allowed statutory liens against the leasehold estate, and all claimants were granted constructive, equitable liens upon all funds held by any purchaser of the oil or gas produced from the well.

Numerous issues are raised on appeal and on a cross-appeal filed by one of the companies. The chancellor based Dews' liability for the money owed on four alternative grounds. We agree with one of the reasons, therefore, the chancellor is affirmed as to the money judgment.

## I. *QUASI-CONTRACT*

In holding Dews liable under a quasi-contract theory, the chancellor found that the claimants provided valuable services and materials to the well, which services and materials were anticipated by the parties and were necessary to the completion of the well. Since Dews claims ownership of the well by virtue of the assignment from Crystal, and has accepted the well and the work performed by the claimants, the court held Dews would be unjustly enriched if he were not required to pay for the work.

Quasi-contracts, or contracts implied in law, are legal fictions, created by the law to do justice. They do not rest upon the express or implied assent of the parties. Rather, the underlying principle is that one person should not unjustly enrich himself at the expense of another. *Dunn* v. *Phoenix Village, Inc.*, 213 F. Supp. 936 (W.D. Ark. 1963); Brill, *Arkansas Law of Damages* § 15-3 (1984). To find unjust enrichment, a party must have received something of value, to which he was not entitled and which he must restore. There must also be some operative act, intent, or situation to make the enrichment unjust and compensable. Brill, *supra*; *Frigillana* v. *Frigillana*, 266 Ark. 296, 584 S.W.2d 30 (1979). The basis for recovery under this theory is the

benefit that the party has received and it is restitutionary in nature. Brill, *supra*. Recovery may be had under quasi-contract where services have been performed, whether requested or not, which have benefited a party. Dobbs, *Handbook on the Law of Remedies*, § 4.2 (1973). Courts, however, will only imply a promise to pay for services where they were rendered in such circumstances as authorized the party performing them to entertain a reasonable expectation of their payment by the party beneficiary. *Dunn, supra*. Quasi-contracts rest on the equitable principle that "whatsoever it is certain that a man ought to do, that the law supposes him to have promised to do . . . Where a party has in good faith rendered a service, not illegal or contrary to public policy, and the other party has accepted and used the service, the former may recover." *Dunn, supra*.

That is the situation we are confronted with here. The appellees provided valuable services and materials for the well, without which the well never would have been drilled. Because the well was drilled and is producing, Dews received his assignment. Dews was undoubtedly enriched by appellees' actions.

■ As to the unjust aspect, the testimony at the trial demonstrated that Dews was aware that the companies were rendering valuable services to the well. Because Massey never paid Dews the $50,000 pursuant to their agreement, Dews at all times knew that Massey was in breach. Since Massey's authority to drill the well stemmed from the same agreement he had breached, Dews could not stand by and watch the companies perform services based on their agreements with Massey. Dews testified he decided to let Massey continue drilling in the hopes that he would finish the well. By making a conscious decision not to inform the companies that Massey was in breach of their agreement, and would therefore never receive the assignment, Dews allowed the debts to be incurred. He cannot permit such an injustice and still receive the benefit of the services rendered. Dews admitted as much during the course of the trial when he testified as follows:

> Q: If the situation occurs what I just said and you don't have to pay any lien claimants any money because you didn't contract with them according to your statement and you don't have to pay Mr. Massey because

he is in breach of your contract and you have got an assignment from Crystal and the well is in [your] name, then you just get a freefall in this whole thing, is that just? Is that fair? For you to get something when you have got nothing in it except an assignment?

Dews: I would say if I am paid I feel like. . .

Q: That is not my question.

Dews: No sir, that is not fair.

The appellee companies, in good faith, performed services on the well. As the owner of the majority of the working interest in the producing well, Dews has accepted and used their services. The companies, therefore may recover from him.

## II. *STATUTORY AND EQUITABLE LIENS*

The chancellor imposed statutory liens pursuant to Ark. Stat. Ann. §§ 51-701—51-714 (Repl. 1971) for all but one of the claimants. The court found that those claimants filed affidavits for lien as required by Arkansas law within the time and manner required by law, adequately describing the land, and attaching statements of account to the liens. We disagree and dissolve the liens.

 Arkansas Stat. Ann. § 51-608.1 (Supp. 1985) provides that no lien may be acquired under the applicable statutes unless the owner or his authorized agent has received a copy of notice of an intent to file a lien prior to the furnishing of the material. All the claimants contracted directly with Massey, who was neither an owner of the leasehold, nor an authorized agent of the owner. At all times while work was being performed, Crystal was the owner of the leasehold. No notice was ever given to Crystal or to Crystal's authorized agent, Dews. Our lien statutes are strictly construed since they provide an extraordinary remedy. *Valley Metal Works, Inc.* v. *A.O. Smith-Inland, Inc.*, 264 Ark. 341, 572 S.W.2d 138 (1978). The liens, therefore, were not properly perfected.

The equitable liens upon all funds held by any purchaser of the oil or gas produced from the well also must fail. At the time the work was performed by the claimants, Dews did not have an interest in the production from the well. Now that the well is

completed and is producing, Dews only receives a percentage of the profits, with the remainder going to Crystal to satisfy its interest in the well. To allow the claimants to impress a lien upon all of the funds would be, in effect, to grant them a greater interest in the well than that owned by Dews. Since a creditor with a lien upon property is entitled at a proper time to have the property sold and the proceeds used for payment of the debt, Crystal, through no fault of its own, conceivably could lose its right to profits from a producing well, should it be sold to satisfy Dews' debts.

Furthermore, the Crystal-Dews agreement specifically provided that Dews would hold Crystal harmless from all losses and claims arising out of its operations on any well. The validity of this agreement has not been challenged, nor has Crystal been made a party to this action. Crystal's interest in the well, therefore, is protected by its contract with Dews. Accordingly, we reverse the award of equitable liens.

## III. *DEFAULT JUDGMENTS*

Dews filed a cross-complaint against two of the claimants, Decca Drilling Co. and Tri-State, on April 14, 1983. The companies were served on April 14 and April 19, respectively. Decca answered on May 23, 1983 (39 days later) and Tri-State answered on January 11, 1984 (266 days later). Dews filed motions to strike the answers and for default judgments since they were not filed within 30 days of service. Ark. R. Civ. P. Rule 12(a). The trial court denied the motions stating that the answers filed by the other claimants inured to their benefit. Dews claims he is entitled to a default judgment as to those two companies.

The trial court was following the Court of Appeals' decision in *Firestone Tire & Rubber Co.* v. *Little*, 269 Ark. 636, 599 S.W.2d 756 (Ark. App. 1980) which held that a default judgment should not be granted based on an untimely answer when an action is against several defendants jointly and the defense interposed by an answering defendant is not personal to him but is common to himself and non-answering defendants. Here, all of the claimants are seeking compensation from Dews for work performed on the same well and under the same theories. An answer filed by one party would be common to all parties in a similar position. The trial court's ruling was correct.

## IV. *WINGO ACT*

For his final point, Dews claims that the Wingo Act, Ark. Stat. Ann. §§ 64-1201—64-1202 (Repl. 1980) was not complied with by four of the claimants and their claims were therefore barred. The act provides that every foreign corporation doing business in this state shall file its articles of incorporation in the secretary of state's office. § 64-1201. Failure to comply with this provision by a company who does business in this state prohibits the company from making any contract in this state which can be enforced by it in law or equity. § 64-1202.

Four of the claimants did not register with the secretary of state. Nevertheless, the judgments against Dews on behalf of these companies are valid. The Wingo Act prevents an unregistered foreign corporation from enforcing its *contracts.* The relief being awarded the appellees, however, is restitutionary in nature and is based upon the theory of quasi-contract. Any contract that might have existed in this case was between the companies and Massey, not Dews. Here, damages are being awarded against Dews because he is the party that has been unjustly enriched by the services performed by appellees. Such a recovery when based upon unjust enrichment does not involve the enforcement of a contract. Dobbs, *Handbook on the Law of Remedies*, § 4.2 p. 237 (1973). This parallels our previous cases where we have held that an unregistered or unlicensed foreign corporation may bring suit to protect its property as long as the suit does not unavoidably involve the enforcement of a prohibited contract. *See, e.g., Ark. Airmotive Div. of Currey Aerial Sprayers, Inc.* v. *Ark. Aviation Sales, Inc.*, 232 Ark. 354, 335 S.W. 2d 813 (1960). A corporation's failure to qualify to do business should not enable third persons to misappropriate its property with impunity. *Id.* Accordingly, such foreign corporations are permitted to maintain restitution suits, *Id.; C.B. International, Inc.* v. *Cook*, 659 F.2d 862 (8th Cir. 1981), and appellees are entitled to judgment on the theory of quasi-contract. The Wingo Act does not apply under these circumstances.

## V. *CROSS-APPEAL*

Analytical Logging, Inc., a Louisiana company hired to do the mudlogging on the well, raises three points in its cross-appeal. First, it argues that the contract was entered into in

Louisiana and that, therefore, matters bearing on the obligations of the contract are to be determined by Louisiana law. Analytical's claim in this lawsuit is based on the court's finding that a quasi-contract existed between the claimants and Dews. No express contract was entered into by Dews with any of the companies. Since the acts upon which the finding of quasi-contract is based took place in Arkansas, the law of this state governs.

Analytical's second argument concerns attorney's fees and need not be addressed since it is based on a Louisiana statute.

■ For its final point on cross-appeal, Analytical seeks punitive damages for Dews' willful or malicious conduct. Punitive damages are not ordinarily recoverable for breach of contract and to support such a claim there must be a showing of a willful or malicious act in connection with a contract. *McClellan* v. *Brown*, 276 Ark. 28, 632 S.W.2d 406 (1982), *rehearing denied*. A bare allegation of fraud which results in monetary loss does not justify punitive damages. *Id.* We do not find that Dews' conduct rises to the level of willful or malicious and, therefore, an award of punitive damages is not justified.

Affirmed in part; reversed in part.

PURTLE, J., not participating.