WESTSIDE GALVANIZING SERVICES, INC., Appellant,

v.

GEORGIA–PACIFIC CORPORATION and Southeastern Conveyor Fabricators, Inc., Appellees,

AAA Steel Detailing, Inc., Intervenor.

No. 89–2941.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 8, 1990.

Decided Dec. 10, 1990.

Rehearing and Objection to Bill of Costs Denied Jan. 24, 1991.

John R. Byrd, Hamburg, Ark., for appellant.

Thomas S. Streetman, Crossett, Ark., for appellees.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and STUART,\* Senior District Judge.

STUART, Senior District Judge.

Westside Galvanizing Services, Inc. (Westside) appeals from a decision of the district court[1] awarding Westside only partial relief on its claims arising out of a construction project in southeastern Arkansas. In 1987, Georgia–Pacific Corporation (Georgia–Pacific), a Georgia corporation, built a chip thickness screening facility at its Crossett, Arkansas, papermill. Southeastern Conveyor Fabricators, Inc. (South-

eastern), an Alabama corporation, furnished steel for the project. AAA Steel Detailing, Inc. (AAA Steel) provided plans to Southeastern for use in fabricating the steel, and Westside, a Louisiana corporation, galvanized the steel before it was shipped to the project.

By contract dated April 10, 1987, Georgia–Pacific agreed to pay $201,131.00 to Southeastern for fabrication, galvanization, and shipping of, among other things, 295 linear feet of steel posts, handrails, and toeboards. The contract provided that Georgia–Pacific would pay twenty-five dollars per foot of additional posts, handrails, and toeboards. By purchase order dated August 26, 1987, Georgia–Pacific ordered, among other things, an additional 222 feet of handrails pursuant to the original contract. The total additional cost of materials ordered was $31,350.00, yielding a total contract price of $232,481.00.

Southeastern contracted with AAA Steel for steel detailing and with Westside for galvanizing the fabricated steel. Westside shipped the galvanized steel directly to the worksite but sent the invoices to Southeastern for payment.

By the end of September, 1987, Southeastern had defaulted on its contracts with Georgia–Pacific, AAA Steel, and Westside. At that time, Southeastern owed $28,201.50 to Westside. Georgia–Pacific already had made substantial payments to Southeastern under its contract but withheld $43,-625.60 upon Southeastern's default.

During late August and early September, Westside contacted Georgia–Pacific to determine whether Georgia–Pacific was paying Southeastern. Westside eventually decided to stop shipping material, but Georgia–Pacific persuaded Westside to ship what it had. Georgia–Pacific indicated that it had withheld payments from Southeastern and that it would make sure that Westside got paid. In a letter dated September 21, Georgia–Pacific informed Southeastern of the situation and indicated that no more

---

\* The Honorable William C. Stuart, United States Senior District Judge for the Southern District of Iowa.

1. The Honorable Oren G. Harris, United States Senior District Judge for the Western District of Arkansas.

payments would be made until the problem was resolved. On September 24, Westside shipped to the worksite a final load of steel galvanized at a cost of $1,264.50. Georgia–Pacific did not pay Westside.

In order to complete the project, Georgia–Pacific purchased 478 feet of handrail from G.T. Contractors, Inc., at a cost of $23,018.03. Georgia–Pacific also paid $2,825.65 for correction of misfabrications by Southeastern.

Westside sued Georgia–Pacific in state court, seeking to establish a materialman's lien and to claim unjust enrichment. After the action was removed to federal court, Westside amended the complaint to add Southeastern as a defendant, to claim promissory estoppel, and to request interest and attorney's fees. Georgia–Pacific filed a cross-complaint against Southeastern, and AAA Steel intervened.

Southeastern declared bankruptcy and defaulted. After a bench trial, the district court denied Westside's lien claim and unjust enrichment claim. The trial court's decision is published at 724 F.Supp. 644 (W.D.Ark.1989). The court awarded $1,264.50 to Westside on its detrimental reliance claim. Id. at 647. The court held that Georgia–Pacific was entitled to a set-off against the $43,625.60 holdback in the amount of $13,893.68 ($2,825.65 for misfabrication and $11,068.03 for additional cost of handrail over the cost of purchasing it pursuant to the Southeastern contract). Id. at 647–48. Of the remaining $29,731.92 holdback, Westside's pro rata share was $19,757.59 and AAA Steel's share was $9,974.33. Accordingly, the court entered a judgment of $21,022.09 ($1,264.50 plus $19,757.59) for Westside. No prejudgment interest or attorney's fees were awarded. Westside appealed and Georgia–Pacific cross-appealed.

■ On appellate review, the district court's interpretation of state law is entitled to substantial deference. See Alumax Mill Prod., Inc. v. Congress Fin. Corp., 912 F.2d 996, 1007 (8th Cir.1990); Giove v. Stanko, 882 F.2d 1316, 1319 (8th Cir.1989),

cert. denied, —— U.S. ——, 110 S.Ct. 1812, 108 L.Ed.2d 943 (1990). Although we are not bound by the district court's interpretation of state law, we will reverse the district court's interpretation only if the court has misapplied the state law or the court's interpretation is fundamentally deficient in analysis, without a reasonable basis, or contrary to a reported state court opinion. See Alumax, 912 F.2d at 1007; Bennett v. Allstate Ins. Co., 889 F.2d 776, 779 (8th Cir.1989).

■ The district court held that, under Arkansas law, notice must be given to a landowner before there is a delivery of materials in order for a materialman's lien to be perfected against the land. 724 F.Supp. at 646. See Ark.Stat.Ann. § 51–608.1 (Supp.1985) (codified at Ark. Code Ann. § 18–44–115(a) (1987)).[2] A statutory exception to the notice requirement provides that no notice is necessary if the transaction is a direct sale to the property owner. Ark.Stat.Ann. § 51–608.5 (codified at Ark.Code Ann. § 18–44–115(e)). A sale is a direct sale only if the owner or his authorized agent personally orders the materials from the lien claimant. Id.

The district court observed that the Arkansas Supreme Court considers whether the material was "charged to, shipped to, and received by" the property owner and whether an invoice and monthly statement were sent to the owner in determining whether there is a direct sale. 724 F.Supp. at 646 (citing National Lumber Co. v. Advance Dev. Co., 293 Ark. 1, 732 S.W.2d 840, 846 (1987), and Duncan v. Davis & Earnest, Inc., 285 Ark. 143, 685 S.W.2d 509 (1985)). The court found that galvanized steel was shipped to and received by Georgia–Pacific, but all Westside invoices were charged to Southeastern. Id. The court held that the shipments did not amount to a direct sale since Georgia–Pacific was not the party being charged. Id. at 646–47.

We agree with the district court's interpretation and application of the Arkansas materialman's lien statute. The Arkansas

2. The Arkansas Code of 1987 Annotated, which superseded the Arkansas Statutes Annotated, became effective at midnight December 31, 1987. See Ark.Code Ann. § 1–2–118.

court strictly construes lien statutes since they provide an extraordinary remedy. *See National Lumber*, 732 S.W.2d at 846; *Dews v. Halliburton Indus., Inc.*, 288 Ark. 532, 708 S.W.2d 67, 70 (1986). No material-man's lien arises unless notice of the lien is given to the owner prior to the delivery of materials. *See* Ark.Stat.Ann. § 51–608.1 (codified at Ark.Code Ann. § 18–44–115(a)); *Ellison v. Tubb*, 295 Ark. 312, 749 S.W.2d 650 (1988); *National Lumber*, at 732 S.W.2d at 846; *Dews*, 708 S.W.2d at 70; *Duncan*, 685 S.W.2d at 509.

■ The district court correctly stated the factors considered in determining whether a direct sale exempts a lien claimant from the notice requirement. *See National Lumber*, 732 S.W.2d at 846; *Duncan*, 685 S.W.2d at 511. We are not convinced that the district court gave undue emphasis to any one factor or that it misunderstood the significance of Georgia–Pacific's dealings with Westside in finding that there was no direct sale between them. The evidence supports the finding that all invoices were charged to Southeastern, and it shows that no contractual relationship existed between Westside and Georgia–Pacific.

■ We reject Westside's argument that "actual notice" satisfied the formal notice requirement. The Arkansas materialman's lien statute provides: "The notice set out in Section 3 [§ 51–608.3] of this Act shall be effective only if given exactly as stated in all capital letters in writing on a single sheet at least 8½″ by 11″, with no other printing or writing thereon." Ark.Stat. Ann. § 51–608.4 (codified at Ark.Code Ann. § 18–44–115(d). Westside has cited no supporting authorities for its argument.

■ We further reject Westside's argument that its filing of a lawsuit within 120 days of the last delivery of materials perfected the lien. The Arkansas statute plainly states that no lien may be acquired unless the owner has received the prescribed notice prior to the furnishing of materials. *See* Ark.Stat.Ann. § 51–608.1 (codified at Ark.Code Ann. § 18–44–115(a)). Although the filing of a lawsuit within 120 days of the last delivery of materials may satisfy some statutory requirements,[3] Westside has cited no authorities indicating that the filing of a lawsuit satisfies the requirement of notice prior to the furnishing of materials.

■ On appeal, Westside contends that its claim for detrimental reliance should not be limited to the value of the shipment made after Georgia–Pacific promised Westside "would be paid" and that it is entitled to recover the unpaid balance in full. Under Arkansas law, the relief awarded under the theory of detrimental reliance need not extend to the full amount stated in the representation. *See Peoples Nat'l Bank of Little Rock v. Linebarger Constr. Co.*, 219 Ark. 11, 240 S.W.2d 12, 17 (1951); *Sanders v. Arkansas–Missouri Power Co.*, 267 Ark. 1009, 593 S.W.2d 56, 58–59 (App.1980). The district court measured the relief by the extent of Westside's reliance. As stated in Restatement (Second) of Contracts § 90 comment d (1981), "relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise." *See Mahoney v. Delaware McDonald's Corp.*, 770 F.2d 123, 127–28 (8th Cir.1985) (applying Missouri law); *Chedd–Angier Prod. Co. v. Omni Publications Int'l, Ltd.*, 756 F.2d 930, 937 (1st Cir.1984) (applying Massachusetts law); *Green v. Interstate United Management Servs. Corp.*, 748 F.2d 827, 830–31 (3d Cir.1984) (applying Pennsylvania law); *RCM Supply Co. v. Hunter Douglas, Inc.*, 686 F.2d 1074, 1079 (4th Cir.1982) (applying Maryland law); *Grouse v. Group Health Plan,*

---

**3.** The Arkansas Supreme Court has held that the filing of a lawsuit within 120 days of the last delivery of materials will satisfy two statutory requirements: (1) the requirement that the lien claimant file, within the 120 day period, a statement of account with the clerk of court, Ark. Stat.Ann. § 51–613 (1971) (codified at Ark.Code Ann. § 18–44–117(a)), and (2) the requirement that the lien claimant give the owner or owner's agent ten days notice of the filing of the statement of account, Ark.Stat.Ann. § 51–608 (codified at Ark.Code Ann. § 18–44–114(a)). *See e.g., National Lumber*, 732 S.W.2d at 846; *Burks v. Sims*, 230 Ark. 170, 321 S.W.2d 767, 768 (1959).

*Inc.*, 306 N.W.2d 114, 116 (Minn.1981); *Wheller v. White*, 398 S.W.2d 93, 97 (Tex. 1965). The district court did not err in awarding $1,264.50 to Westside for its detrimental reliance on Georgia–Pacific's representation.

■ Before there can be unjust enrichment, a party must have received something of value, to which he was not entitled and which he must restore. *Dews v. Halliburton Indus., Inc.*, 288 Ark. 532, 708 S.W.2d 67, 69 (1986). Under Arkansas law, "[o]ne who is free from fault cannot be held to be unjustly enriched merely because he has chosen to exercise a legal or contract right." *Whitley v. Irwin*, 250 Ark. 543, 465 S.W.2d 906, 910 (1971). "One is not unjustly enriched by receipt of that to which he is legally entitled." *Id.*

■ Georgia–Pacific paid Southeastern the total contract price less a $43,625.60 holdback. 724 F.Supp. at 647. The district court found that Georgia–Pacific was legally entitled to a setoff of its losses sustained due to Southeastern's default and misfabrications. *Id.* (citing *In re Hagan*, 41 B.R. 122 (Bkrtcy.R.I.1984)).

We reject Westside's argument that Georgia–Pacific was not entitled to assert a setoff of its losses. The issue of setoff properly was before the court in determining the legal entitlement element of Westside's equitable unjust enrichment claim.

In its cross-appeal, Georgia–Pacific argues that it was entitled to offset the entire cost of purchasing 478 feet of handrail from G.T. Contractors, Inc. ($23,018.03). The district court found that Georgia–Pacific contracted for and received 295 feet of handrail under the original contract and 222 feet of handrail under the purchase order made pursuant to the contract. It found that the 478 feet of handrail ordered from G.T. Contractors, Inc., was in addition to the handrail ordered and received from Southeastern. These findings are supported by substantial evidence.

■ If the additional 478 feet of handrail had been ordered from Southeastern pursuant to the contract, it would have cost Georgia–Pacific $11,550 (478 ft. @ $25/ft.).

Because Southeastern defaulted, the 478 feet of handrail cost Georgia–Pacific an additional $11,068.03. Therefore, Southeastern's default caused Georgia–Pacific to sustain damages of $11,068.03. The district court did not err in awarding Georgia–Pacific the difference between Southeastern's contract price and the market price rather than the total cost of the additional handrail.

■ Of the $43,625.60 holdback, Georgia–Pacific was legally entitled to retain $13,893.68 for Southeastern's default and misfabrications. Because Georgia–Pacific agreed that the excess ($29,731.92) should be divided between Westside and AAA Steel, the district court properly held that Georgia–Pacific was not unjustly enriched.

■ Under Arkansas law, attorney's fees are not allowed except when expressly provided for by statute. *Damron v. University Estates, Phase II, Inc.*, 295 Ark. 533, 750 S.W.2d 402, 404 (1988). An Arkansas statute provides:

> In any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs.

Ark.Code Ann. § 16–22–308 (Supp.1989). Westside brought an action to recover on a materialman's lien, unjust enrichment, and detrimental reliance and not on any of the instruments or contracts expressly listed in the statute. Westside obtained only partial relief on its detrimental reliance claim and cannot be said to have prevailed on its unjust enrichment claim because Georgia–Pacific conceded at the outset that Westside and AAA Steel were entitled to the excess money withheld from Southeastern. The district court did not err in denying Westside's motion for attorney's fees, in-

terest and costs under the Arkansas statute.

The decision of the district court is affirmed.