**Paul Martin WALSER; Philip Martin McLaughlin, Plaintiffs/Appellants,**

v.

**TOYOTA MOTOR SALES, U.S.A., INC., Defendant/Appellee.**

Nos. 93–2342, 93–2575.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1994.

Decided Dec. 27, 1994.

---

1. The Honorable Edward L. Filippine, Chief Judge, United States District Court for the Eastern District of Missouri.

Robert Arthur Brunig, Minneapolis, MN, argued, for appellant.

Hildy Bowbeer, Minneapolis, MN, argued (John Q. McShane and Kim Schmid, on the brief), for appellee.

Before HANSEN, Circuit Judge, HEANEY, Senior Circuit Judge, and JOHN R. GIBSON, Senior Circuit Judge.

HANSEN, Circuit Judge.

The plaintiffs, Paul Martin Walser and Philip Martin McLaughlin, appeal from a jury verdict in this diversity case awarding them $232,131 in damages on their promissory estoppel claim against Toyota Motor Sales. The plaintiffs argue that the district court[1] erred by instructing the jury that the plaintiffs' damages on their promissory estoppel claim were limited to out-of-pocket expenses. The plaintiffs also argue that the district court erred in declining to award specific performance as an alternative remedy on their promissory estoppel claim, in denying their motion for judgment as a matter of law on their contract claim, in instructing the jury on their contract claim, in requiring them to accept payment from Toyota for $.89 less than the amount of damages and interest awarded, in granting summary judgment on their claim under the Minnesota Motor Vehicle Sale and Distribution Regulations, and in precluding them from taxing costs prior to a final determination of this case on appeal. We affirm.

## I.

In 1987, Toyota Motor Sales, U.S.A., conducted market surveys throughout the United States to identify the best markets for the new line of "Lexus" automobiles that Toyota planned to introduce in 1989. The market studies identified the Minneapolis/St. Paul, Minnesota, metropolitan area as a two-dealership market and recommended establishing dealerships in two suburban areas—Wayzata and the Bloomington/Richfield area.

---

1. The Honorable Robert G. Renner, Senior United States District Judge for the District of Minnesota.

In April 1988, Toyota issued letters of intent for the prospective dealerships in the two locations. The recipient of the letter for the Bloomington/Richfield dealership was unwilling or unable to comply with the conditions of the letter of intent and returned it to Toyota in early 1989. Soon after, Toyota began to search anew for a dealer for the Bloomington/Richfield location. Lexus Central Region Area Manager, James Melton, asked Stephen Haag, the Central Region Market Manager, to contact Walser, who was then co-owner with McLaughlin of a BMW dealership and a Lincoln–Mercury dealership both located in Bloomington. Both Walser and McLaughlin met with Haag and indicated that they would be interested in obtaining the Lexus dealership.

Toyota had instituted a three-step process to establish dealerships. First, the prospective dealer would fill out a formal application and propose a dealership plan to Toyota. If acceptable, then Toyota would issue a letter of intent signed by the head of the Lexus division and to be signed by the prospective dealer, which would contain final conditions that had to be satisfied before the agreement was finalized. If all conditions were satisfied, then a formal dealership agreement would be approved by Toyota and signed by the parties to establish the dealership.

Walser and McLaughlin applied for the Lexus dealership by completing and signing the formal application for the dealership. The application specifically provided that a dealership agreement was not effective until a formal dealership agreement was approved and signed by an officer of Toyota. Walser's preliminary proposals, to have the Lexus dealership share space with the BMW dealership or to move the BMW business and to retrofit the BMW facility for Lexus, were both rejected by Toyota, but negotiations continued between the parties. However, unknown to Toyota, Walser and McLaughlin were also negotiating at the same time to buy a Mazda/BMW dealership in St. Paul.

After the retrofit proposal was rejected, Walser and McLaughlin began negotiating to acquire additional property adjacent to the their Bloomington BMW dealership as a site for the Lexus dealership. On October 15, 1989, Walser's father, R.J. Walser, reached a "handshake deal" to purchase that property for the proposed Lexus dealership from its owner. On October 16, 1989, Walser and McLaughlin wrote Haag and informed him of the agreement to purchase the land but did not disclose that R.J. Walser was buying the land.

On October 17, 1989, Walser and McLaughlin traveled to California to meet with Lexus management and to present their new dealership proposal and financing arrangements. The fact that R.J. Walser was buying the land and that McLaughlin and Walser were in the process of purchasing a Mazda/BMW dealership in St. Paul were not disclosed. Lexus management viewed the proposal favorably, and one executive stated that he was with Walser and McLaughlin.

On October 24, 1989, Walser called Haag to ask whether the letter of intent for the dealership was forthcoming. Haag told Walser that while the letter was not yet executed, things looked positive, the deal was done, only one more signature was needed, and finalizing the deal was basically a rubber stamp. Later that day, R.J. Walser entered into a purchase agreement and paid $50,000 in earnest money for the land for the proposed Lexus dealership.

In December 1989, the letter of intent was formally approved by Lexus management. Haag called Walser and congratulated him and told him that "you're our dealer" and the letter would be coming by mail. Later in the day, however, Melton told Haag that based on new information Lexus had received regarding Walser and McLaughlin's financing for the new dealership, the letter of intent would be put on hold. A couple days later, Haag called Walser to tell him that a mistake had been made and that the letter had not been finally approved. Haag requested additional financial information.

On January 3, 1990, R.J. Walser closed on the property he was purchasing for the proposed Lexus dealership. On February 5, 1990, Walser and McLaughlin provided additional financial information and disclosed that R.J. Walser was available, but not necessary, to supply the required financing. On Febru-

ary 23, 1990, Haag informed Walser that Lexus would not be issuing the letter of intent to him and McLaughlin.

On March 7, 1990, Walser and McLaughlin filed a seven-count complaint in Minnesota state court against Toyota. Walser and McLaughlin sought relief under the following theories: breach of the Minnesota motor vehicle franchise statute (count I); breach of contract (count II); promissory estoppel (count III); joint venture (count IV); fraud (count V); intentional interference with contractual relations (count VI); and interference with a prospective business advantage (count VII). Toyota removed this action to the United States District Court for the District of Minnesota.

The district court granted Toyota's motion for partial summary judgment and dismissed the claims for breach of the Minnesota motor vehicle franchise statute and for recovery on a joint venture theory. Prior to trial, the parties filed a joint stipulation to dismiss without prejudice the claims for intentional interference with contractual relations and interference with a prospective business advantage. The case went to trial in February 1992 on the breach of contract, promissory estoppel, and fraud claims. Walser and McLaughlin sought approximately $7,600,000 in damages, which included expected lost profits. The jury returned a verdict in favor of Toyota on the contract and fraud claims but in favor of Walser and McLaughlin on the promissory estoppel claim. The jury awarded Walser and McLaughlin $232,131 in accordance with the district court's instruction to limit damages on the promissory estoppel claim to Walser and McLaughlin's out-of-pocket expenses.

The district court denied Walser and McLaughlin's posttrial request for specific performance and their motions for judgment as a matter of law or for a new trial. Walser and McLaughlin filed a notice of appeal. Subsequently, Toyota tendered a check to Walser and McLaughlin for $276,782.82, which Toyota claimed represented the full amount of the judgment, prejudgment inter-

est, and postjudgment interest due. Walser and McLaughlin refused to accept the check because it was $44.98 short of the full amount due. The district court initially entered an order directing them to accept the $276,-782.82. Toyota subsequently realized that the amount indeed was short, and the district court entered an amended order to increase the amount due by $44.09. Walser again rejected the payment claiming it was still $.89 short of the full amount due and that additional postjudgment interest continued to accrue. Walser asked the district court to amend its order again to reflect these additional amounts, but the district court refused to do so. Walser then filed an amended notice of appeal to include this issue.

## II.

This is a diversity case governed by Minnesota law. We review the district court's analysis of Minnesota law de novo. *Salve Regina College v. Russell*, 499 U.S. 225, 231, 111 S.Ct. 1217, 1220–21, 113 L.Ed.2d 190 (1991). Walser and McLaughlin raise eight issues in this appeal.[2] We will address them in the order presented in the briefs.

### A.

Walser and McLaughlin's principal argument in this appeal is that the district court erred in instructing the jury that damages on their promissory estoppel claim were limited to the out-of-pocket expenditures they made in reliance on Toyota's promise. The jury awarded $232,131 in out-of-pocket expenses. Walser and McLaughlin argue that under Minnesota law, the court should have allowed the jury to consider awarding lost profits of up to $7,600,000 allegedly flowing from Toyota's failure to keep its promise.

Minnesota has adopted the statement of the doctrine of promissory estoppel found at Restatement (Second) of Contracts § 90 (1981). *Christensen v. Minneapolis Mun. Employees Retirement Bd.*, 331 N.W.2d 740,

---

2. At oral argument, the parties only addressed the first issue, which both recognized as the most important in the appeal. Hence, we will treat that claim with the most attention in deciding this appeal.

749 (Minn.1983). Section 90 provides, in relevant part:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981); *see also Cohen v. Cowles Media Co.,* 479 N.W.2d 387, 391–92 (Minn.1992) (relying on and quoting from portions of section 90); *Christensen,* 331 N.W.2d at 749 (quoting section 90). Of particular significance to this case is the meaning of the last phrase of the quoted section: "The remedy granted for breach may be limited as justice requires." The commentary to section 90 elaborates on the nature of the remedy available for breach based on promissory estoppel:

> A promise binding under this section is a contract, and full-scale enforcement by normal remedies is often appropriate. But the same factors which bear on whether any relief should be granted also bear on the character and extent of the remedy. *In particular, relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise.*

Restatement (Second) of Contracts § 90 cmt. d (emphasis added). Minnesota courts have incorporated the underlined language stating: "When a promise is enforced pursuant to section 90 '[t]he remedy granted for breach may be limited as justice requires.' Relief *may be limited* to damages measured by the promisee's reliance." *Grouse v. Group Health Plan,* 306 N.W.2d 114, 116 (Minn.1981) (alterations in original) (emphasis added). The Minnesota Court of Appeals, relying on *Grouse,* further stated that "relief *may be limited* to the party's out-of-pocket expenses made in reliance on the promise." *Dallum v. Farmers Union Cent. Exch., Inc.,* 462 N.W.2d 608, 613 (Minn.Ct.App.1990) (emphasis added).

█ The critical question in this case is whether the language of section 90 as interpreted by the Minnesota courts authorized the district court to limit damages to Walser and McLaughlin's out-of-pocket expenses. We conclude that it did. This language is permissive—courts *may* limit relief as justice requires. The Minnesota Court of Appeals specifically stated that "relief *may* be limited to the party's out-of-pocket expenses made in reliance on the promise." *Dallum,* 462 N.W.2d at 613 (emphasis added). This permissive language and the Minnesota courts' interpretation of it indicate to us that Minnesota courts, like the other courts addressing this issue, treat the damages decision under section 90 as being within the district court's discretion. *See, e.g., Chedd–Angier Prod. Co., Inc. v. Omni Publications Int'l, Ltd.,* 756 F.2d 930, 937 (1st Cir.1985) (in determining damages under section 90 "whether to charge full contract damages, or something less, is a matter of discretion delegated to district courts"); *Green v. Interstate United Management Serv. Corp.,* 748 F.2d 827, 831 (3d Cir.1984) (concluding that district court did not abuse its "equitable discretion" under section 90 "in refusing to allow full-scale enforcement of the promise"); *Signal Hill Aviation Co. v. Stroppe,* 96 Cal.App.3d 627, 158 Cal.Rptr. 178, 186 (1979) ("California Supreme Court appeared to emphasize … the exercise of judicial discretion in promissory estoppel cases to fashion relief to do justice") (citing *C & K Eng'g Contractors v. Amber Steel Co.,* 23 Cal.3d 1, 151 Cal.Rptr. 323, 587 P.2d 1136 (1978)); *Gerson Elec. Constr. Co. v. Honeywell, Inc.,* 117 Ill.App.3d 309, 72 Ill.Dec. 851, 453 N.E.2d 726, 728 (1983) (decision under section 90 whether the damage award prevents injustice is a policy decision and "necessarily embraces an element of discretion").

█ We are left then to determine only whether the district court abused its discretion in limiting the damages to out-of-pocket expenses. We will not disturb a district court's discretionary decision if that decision remains within "the range of choice" available to the district court, accounts for all relevant factors, does not rely on any irrelevant factors, and does not constitute a "clear error of judgment." *Kern v. TXO Prod. Corp.,* 738 F.2d 968, 970 (8th Cir.1984). We

cannot find that the district court abused its discretion in limiting the award of damages on the promissory estoppel claim to out-of-pocket expenses.

The district court's limitation of damages was within the "range of choices" approved by Minnesota courts and our court. The Minnesota Supreme Court has provided that "relief may be limited to damages measured by the promisee's reliance." *Grouse,* 306 N.W.2d at 116. We noted earlier that the Minnesota Court of Appeals specifically provided that "relief may be limited to the party's out-of-pocket expenses made in reliance on the promise." *Dallum,* 462 N.W.2d at 613. Similarly, we have observed that comment d to section 90 specifically states that "relief may sometimes be limited to restitution or to damages or specific relief measured by the extent of the promisee's reliance rather than by the terms of the promise." *Westside Galvanizing Serv., Inc. v. Georgia–Pacific, Corp.,* 921 F.2d 735, 739 (8th Cir.1990) (quoting comment d). We went on to find that the district court "did not err" in limiting damages to the amount of reliance instead of the full unpaid balance. *Id.* at 740. Hence, we believe that the district court acted within the "range of choice" available under the law in instructing the jury on the remedy available after a finding of promissory estoppel.[3]

Our review of the record also reveals that the district court did not make a "clear error of judgment" in finding that justice required limiting Walser and McLaughlin to out-of-pocket expenses. Toyota presented evidence that the dealership was far from a certainty and that Walser and McLaughlin would have great difficulty in meeting the capitalization requirements. The negotiations were still in a preliminary stage and broke down at that point. The promise on which they relied did not guarantee that they would get the dealership, as there were other conditions in the letter of intent that still would have had to be satisfied. Walser and McLaughlin could have relied on the promise for only a short period of time, as they were informed by Haag only a couple of days later that he had misinformed them about the status of the letter of intent. Moreover, Walser and McLaughlin have not demonstrated any opportunity they lost by virtue of relying on the promise by Toyota. Accordingly, the district court did not make a clear error of judgment in limiting Walser and McLaughlin's damages on their promissory estoppel claim to out-of-pocket expenses.

We agree with Walser and McLaughlin that the district court is not *required* under Minnesota law to limit the remedy in promissory estoppel cases to out-of-pocket expenses. However, such a limitation is firmly within the range of choices available to the district court, and the district court is free to exercise its discretion in selecting the one which it believes best serves the interests of justice. We conclude that the district court did not abuse its discretion in electing to

---

3. An illustration provided by the Restatement itself provides additional support for the district court's decision:

> A, who owns and operates a bakery, desires to go into the grocery business. He approaches B, a franchisor of supermarkets. B states to A that for $18,000 B will establish A in a store. B also advises A to move to another town and buy a small grocery to gain experience. A does so. Later B advises A to sell the grocery, which A does, taking a capital loss and foregoing expected profits from the summer tourist trade. B also advises A to sell his bakery to raise capital for the supermarket franchise saying "Everything is ready to go. Get your money together and we are set." A sells the bakery taking a capital loss on this sale as well. Still later, B tells A that considerably more than an $18,000 investment will be needed, and the negotiations between the parties collapse. At the point of collapse many details of the proposed agreement between the parties are unresolved. The assurances from B to A are promises on which B reasonably should have expected A to rely, and A is entitled to his actual losses on the sales of the bakery and for his moving and temporary living expenses. *Since the proposed agreement was never made, however, A is not entitled to lost profits from the sale of the grocery or to his expectation interest in the proposed franchise from B.*

Restatement (Second) of Contracts § 90 cmt. d, illus. 10 (emphasis added). This illustration provides a close analogy to our case and further indicates that the district court correctly denied the recovery of lost profits because the "proposed agreement was never made" in this case. Walser and McLaughlin were still in the negotiation stages with Toyota when the deal broke down, and the jury found for Toyota on the breach of contract claim.

limit Walser and McLaughlin's recovery on their promissory estoppel claim to out-of-pocket expenses.

### B.

■ Walser and McLaughlin next argue that the district court erred in limiting out-of-pocket expenses to "the difference between the actual value of the property and the price paid for it." (Jury Instr. No. 34.) They argue that they should have been allowed to "recoup" at least the full amount of the "unamortized capital investments" they made in attempting to obtain the dealership. They claim the full value of their investment totals more than $1,000,000 including the $676,864 they paid for the land and the various expenses in maintaining it.

Although not argued by the parties, we point out that the instruction Walser and McLaughlin complain about defines out-of-pocket expenses only in the damage instruction for fraud and misrepresentation. The promissory estoppel damage instruction provides only that damages are limited to out-of-pocket expenses with no further limitation on out-of-pocket expenses. Even if the fraud damage instruction could be read as a further limitation on promissory estoppel damages, the language of that instruction is not as limited as Walser and McLaughlin represent here. That instruction provides that out-of-pocket expenses are "the difference between the actual value of the property received and the price paid for it, *together with such other damages as were naturally and directly caused by the fraud or misrepresentation*." (Jury Instr. No. 34.) (emphasis added). If that instruction defined promissory estoppel damages, the jury was still free to add any other damages directly caused by reliance on Toyota's promise but simply chose not to do so in this case.

■ Moreover, we find no error in the district court's instruction to the extent that it defined their out-of-pocket expenses to be only the difference between the actual value and the amount paid for the property. Such an instruction reflects the amount of *damage* Walser and McLaughlin suffered from relying on Toyota's promise. For example, while the purchase price of the land totalled $676,-864 Walser acknowledged in his trial testimony that the land still had significant value, worth at least $550,000. (Tr. Vol. VI at 23–24.) Their *damage* from relying on Toyota's promise is essentially the difference between the two amounts. Accordingly, the district court committed no error in instructing the jury on how to determine the damage award.

### C.

■ Walser and McLaughlin next argue that the district court erred in declining to order specific performance of the dealership agreement as an alternative to the monetary award on their promissory estoppel claim. "Specific performance is an equitable remedy ... 'addressed to the sound discretion of the trial court.'" *Lilyerd v. Carlson*, 499 N.W.2d 803, 811 (Minn.1993) (quoting *Flynn v. Sawyer*, 272 N.W.2d 904, 910 (Minn.1978)). The district court declined to order specific performance noting that the monetary damage award was adequate relief given the facts of this case. (Appellants' App. at 815.) For the same reasons outlined above, we cannot find the district court's decision to deny specific performance to be an abuse of discretion.

### D.

Walser and McLaughlin next argue that the district court erred after trial by requiring them to accept payment from Toyota for less than the total amount of the judgment and interest due. Walser and McLaughlin's complaint here, boiled down, is that the district court ordered them to accept payment from Toyota that was $.89 short of full compensation (plus whatever interest could accrue on $.89 in the three days between May 17, 1993, and May 20, 1993). Even if we assume that the district court erred by requiring Walser and McLaughlin to take $.89 less than they were lawfully entitled to, that error was harmless in this case because we cannot begin to perceive how the deprivation of $.89 harmed Walser and McLaughlin's "substantial rights" in this case. *See* 28 U.S.C. § 2111 (in any appeal the court shall disregard "errors or defects which do not affect the substantial rights of the parties");

*see also* Fed.R.Civ.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties"). This argument merits the phrase, *de minimus non curat lex.*

### E.

■ Walser and McLaughlin next argue that the district court erred in denying their motion for judgment as a matter of law on their contract claim. We disagree. "Judgment as a matter of law is appropriate only when all of the evidence points one way and is 'susceptible of no reasonable inference sustaining the position of the nonmoving party.'" *Keenan v. Computer Assoc. Int'l, Inc.,* 13 F.3d 1266, 1269 (8th Cir.1994) (quoting *White v. Pence,* 961 F.2d 776, 779 (8th Cir. 1992)). There is abundant evidence in this case which would sustain Toyota's position that the letter of intent did not form a contract. First, the letter of intent was never delivered to or signed by Walser and McLaughlin. Moreover, the initial application for the dealership specified very clearly that there was no dealership contract until the final dealership agreement was formed. The parties never agreed otherwise. We conclude that the district court committed no error in allowing the jury to determine the breach of contract issue.

### F.

Walser and McLaughlin next argue that the district court erred by declining to give two requested jury instructions dealing with the effect of the dealership application and its language indicating that no contract would be formed or would take effect until the dealership agreement was signed. They argue that the district court should have instructed the jury that a contract could be modified by oral agreement even if the parties specified in the contract that it could not be modified or, alternatively, that the dealership application itself was not a binding contract.

The district court decided not to give the oral modification instruction because it found that the application was not a written contract and that there was no evidence in the record of an oral agreement to modify. (Tr. Vol. IX at 2.) Walser and McLaughlin made no objection to the ruling and instead asked the court to give the alternative instruction that the dealership application itself was not a binding contract. The district court then denied the request for the alternative instruction, noting that "it is getting awfully close to the court reciting the facts, invading the province of the jury." (*Id.* at 4.)

"We review jury instructions as a whole to determine whether they fairly and adequately instruct the jury as to the substantive law." *Brown v. Stites Concrete, Inc.,* 994 F.2d 553, 559 (8th Cir.1993). "The district court has wide discretion in the formulation of jury instructions." *Id.* We find that the district court did not abuse its discretion in formulating the jury instructions in this case.

■ We first point out that Walser and McLaughlin made no timely objection to the district court's decision not to give the oral modification instruction. Accordingly, review for plain error is appropriate. However, under any standard of review we find the district court committed no error in denying the instruction because there was no evidence of an oral modification in this case. "A party that fails to introduce sufficient evidence to support a jury instruction is not entitled to it." *First Dakota Nat'l Bank v. St. Paul Fire & Marine Ins.,* 2 F.3d 801, 815 (8th Cir.1993).

■ Similarly, we conclude the district court committed no error in denying Walser and McLaughlin's request for an instruction that the dealership application was not a binding contract. First, there is no basis in the record for the instruction. Toyota never argued that the dealership application was a contract that Walser and McLaughlin should have legally enforced against them. It argued only that the dealership application was objective evidence that the parties fully understood that the dealership contract would be formed only upon both parties signing onto the dealership agreement. Moreover, we agree with the district court's assessment that Walser and McLaughlin's requested instruction would risk invading the jury's province to determine the effect of the language

in the dealership application. *See United States v. White Horse,* 807 F.2d 1426, 1430–31 (8th Cir.1986) (reversing because trial court invaded jury's province). Accordingly, we conclude that the district court committed no error in refusing Walser and McLaughlin's requested instructions to support their contract claim.

### G.

Walser and McLaughlin next argue that the district court erred by granting summary judgment to Toyota on their claim against Toyota under a provision of the Minnesota Motor Vehicle Sale and Distribution Regulations, which provides:

> Notwithstanding the terms of any franchise agreement or waiver to the contrary, no manufacturer shall cancel, terminate, or fail to renew any franchise relationship with a licensed new motor vehicle dealer unless the manufacturer has:
>
> (a) satisfied the notice requirement of section 80E.08;
>
> (b) acted in good faith as defined in section 80E.03, subdivision 9; and
>
> (c) good cause for the cancellation, termination, or nonrenewal.

Minn.Stat. § 80E.06(1) (West Supp.1994). Walser and McLaughlin alleged that Toyota cancelled or terminated their Lexus franchise without notice or good cause.

Summary judgment is mandatory under Rule 56(c) "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). We review the district court's summary judgment decision de novo using the same standards as the district court. *Egan v. Wells Fargo Alarm Serv.,* 23 F.3d 1444, 1446 (8th Cir.1994). We conclude that the district court committed no error because summary judgment was mandatory here given the fact that Walser and McLaughlin failed to establish that they were qualified for the protection they sought from the Motor Vehicle Franchise statutes.

The cancellation/termination provision to which Walser and McLaughlin look does not apply in this case because Walser and McLaughlin are not "new motor vehicle dealers" as defined in the statute. *See* Minn. Stat. § 80E.02 (80E.01–80E.17 apply only to new motor vehicle dealers). "New motor vehicle dealer" is defined as a person holding "a valid sales and service agreement, franchise, or contract, granted by a manufacturer, distributor, or wholesaler for the sale of its motor vehicles." Minn.Stat. 80E.03(3). In their verified complaint, Walser and McLaughlin alleged Toyota had granted them a "franchise." "Franchise" is defined as "written agreement or contract" between the manufacturer and dealer. Minn.Stat. § 80E.03(8).

We conclude that Walser and McLaughlin failed to present any evidence that they had a *"written* agreement or contract," *id.* (emphasis added), which is a necessary element of the breach of the Motor Vehicle Franchise Statute they pleaded. Accordingly, we conclude that the district court committed no error in granting summary judgment to Toyota.

### H.

Walser and McLaughlin's final argument is that the district court's procedure for taxing costs is contrary to law. We need not reach the issue, however, as they did not raise it before the district court.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.