COLONIA INSURANCE COMPANY, a New York corporation, and Associated Insurance Management Corporation, a New York corporation, Plaintiffs

v.

CITY NATIONAL BANK, Larry H. Putnam, Phillip Richmond, CC General Agency, Carolyn Jean Cooper, Donald Maurice Coleman, Marilyn J. Coleman, William R. Beason, Billy W. Beason, Michelle Thomas, Mark A. Thomas, Sharon Newsom, Betty I. Welch and Diana Welch, Defendants

No. Civ.97–2115.

United States District Court, W.D. Arkansas, Fort Smith Division.

Dec. 9, 1997.

M. Keith Blythe, Fort Smith, AR, James E. Nesland, Richard P. Salgado, Cooley, Godward, LLP, Denver, CO, for Plaintiffs.

S. Walton Maurras, Harper, Young, Smith & Maurras, Fort Smith, AR, for Defendant City Nat. Bank.

H. Ray Hodnett, Van Buren, AR, for Defendant Larry H. Putman.

G. Alan Wooten, R. Gregory Aclin, Warner, Smith & Harris PLC, Fort Smith, AR, for Defendant Phillip Richmond.

Jerry D. Pruitt, Fort Smith, AR, for Defendants CC Gen. Agency, Donald Maurice Coleman, Carolyn Jean Cooper, Marilyn J. Coleman.

Kevin Swindell, Hixon & Cleveland Law Office, Paris, AR, for Defendants William R. Beason, Billy W. Beason.

Ronald W. Metcalf, Fort Smith, AR, for Defendant Michelle Thomas, Mark A. Thomas, Betty I. Welch, Diana Welch.

Robert L. Jones, III, Jones Law Firm, Fort Smith, AR, for Defendants Midland Risk Ins. Co., Ronald W. Metcalf.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, District Judge.

This case is currently before the court on defendant Sharon Newsom's motion for summary judgment and plaintiffs' response thereto. For the reasons stated below, Newsom's motion is granted.

### I. BACKGROUND

Defendant Sharon Newsom was employed by Arkansas General Agency, Inc. ("AGA"), a general insurance agency, from 1984 to 1996. Both AGA and Delta General Agency, Inc. ("Delta"), another general insurance agency, had entered into agency agreements with plaintiff Colonia Insurance Company ("CIC")[1] to act as general agents to write

1. AGA also entered into such an agreement with Colonia Underwriters Insurance Company, which is not a party to the present litigation.

property and casualty insurance. Pursuant to their contracts with CIC, AGA and Delta were required to collect insurance premiums from policy holders on behalf of the plaintiffs, hold the funds until they were due, and remit them to the plaintiffs at that time.[2]

Throughout the relevant time period, AGA was wholly owned by Rick Welch and was licensed to do business in the State of Arkansas and elsewhere. Delta was owned by Rick Welch and two other individuals and was licensed to do business in the State of Tennessee.

Plaintiffs brought an action against Rick Welch and AGA in the United States District Court for the Western District of Arkansas, Fort Smith Division, alleging that they had committed civil conspiracy, fraud, deceit, conversion, breach of fiduciary duty, and breach of contract by misappropriating at least $3.4 million of premiums collected by AGA, Delta, and Ashland General Agency ("Ashland").[3] See, Associated Ins. Mgmt. Corp. v. Arkansas Gen. Agency, Inc., Civ. No. 94–2223. Plaintiffs claimed that AGA, Delta, and Ashland were required to hold this money in trust for plaintiffs as fiduciaries until the funds were eventually remitted to plaintiffs. On February 7, 1996, following a jury trial resulting in a unanimous verdict for plaintiffs, judgments in the approximate amount of $3.4 million in compensatory damages and $1.8 million in punitive damages were entered against Rick Welch and AGA. Both Rick Welch and AGA are named as co-conspirators in the present action but not as defendants, as they are now debtors in bankruptcy.

Subsequent to the suit against Rick Welch and AGA in Arkansas, plaintiffs brought a similar action against Delta in the United States District Court for the Western District of Tennessee, alleging that Delta participated in the same misappropriation of insurance premiums that gave rise to the Arkansas suit. See, Associated Ins. Mgmt., Inc. v. Delta Gen. Agency, Inc., Civ. No. 95–2614–GV. On May 13, 1997, a judgment in the amount of $813,556 was entered in favor of plaintiffs against Delta based on claims identical to those for which Rick Welch and AGA were held liable in Arkansas. As with Rick Welch and AGA, Delta is named only as a co-conspirator in the case at hand.

Plaintiffs presently allege that over the course of the AGA action, the Delta action, and the bankruptcy proceedings subsequently commenced by Rick Welch and AGA, plaintiffs learned that the defendants, including Sharon Newsom, conspired with and aided and abetted Rick Welch, AGA, and Delta to defraud plaintiffs and misappropriate from them the $3.4 million of insurance premiums that were the subject of the previous suits. Plaintiffs also allege that defendants are independently liable on a variety of claims related to these premiums, including conversion, negligence, breach of fiduciary duty, fraudulent concealment, and unjust enrichment.

Newsom was employed by AGA for approximately twelve years. She asserts that she served as a claims supervisor and evaluated, negotiated, adjusted, settled and supervised the defense of insurance claims on behalf of AGA, Delta and their client companies. Newsom contends that she had nothing to do with the management, accounting or bookkeeping of AGA or Delta.

AGA and Delta maintained adjuster accounts at City National Bank ("CNB"). The adjuster accounts were used for payments of claims generated from policies issued through client insurance companies in London, England. As claims supervisor, it was Newsom's responsibility to make claim payments on behalf of AGA and Delta. Newsom would issue drafts drawn on the AGA and Delta adjuster accounts at CNB by entering certain relevant information into the computer. The computer would then generate printed claim checks.

---

**2.** Plaintiff Associated Insurance Management Corporation is a management company that had entered into an agreement with CIC to compute, collect, and receive the insurance premiums that were originally collected and held by AGA and Delta.

**3.** According to the amended complaint, Ashland is another insurance company owned by Rick Welch, which was also found to have converted the plaintiffs' insurance premiums in the prior Arkansas suit against Rick Welch and AGA.

Newsom asserts that the issuance of drafts on the AGA and Delta adjuster accounts were done in the ordinary course of performing her duties as a claims supervisor. Newsom asserts that it was Larry Putman's responsibility, as office manager, to deposit into the AGA adjuster account, funds sufficient to cover the draft. Newsom contends that it was Greg Welch's responsibility to deposit into the Delta adjuster account funds sufficient to cover drafts.

Newsom contends that she negotiated and settled claims but that she had nothing to do with securing the funds to cover the drafts issued. She contends that she made no deposits into the adjuster accounts and did not know of the source of the funds deposited into those accounts. She states that she reasonably assumed that the funds deposited in the adjuster accounts were funds that came from the London insurers whose claims were being paid. She states that she had no reason to believe that the funds came from commingled funds belonging to plaintiffs.

Newsom asserts that the only benefit she received while working at AGA was in the form of salary and bonuses. Newsom states that she received a reasonable salary for the work that she did while employed at AGA and had no reason to believe that her salary and bonus payments came from any source other than the normal operating revenues of AGA.

Newsom was paid the following amounts during her employment at AGA:

| | Total | Bonus [4] |
|---|---|---|
| 1984 | $14,385.69 | unknown [5] |
| 1985 | $22,050.79 | unknown |
| 1986 | $19,885.19 | unknown |
| 1987 | $18,281.85 | unknown |
| 1988 | $17,640.00 | unknown |
| 1989 | $20,580.00 | unknown |
| 1990 | $26,136.01 | unknown |
| 1991 | $34,790.54 | $10,290 |
| 1992 | $37,278.03 | $13,038 |
| 1993 | $27,055.67 | $ 6,100 |
| 1994 | $39,616.00 | $11,600 |
| 1995 | $30,987.60 | $ 3,000 |
| 1996 | $ 3,999.42 | none |

Newsom asserts that she received bonuses, as did other AGA employees, based on production at AGA. She contends that she was never advised as to the method by which bonus payments were calculated. In 1994, Newsom received an additional amount of $10,000. Newsom asserts that the $10,000 represented compensation for overtime hours she had worked for a number of years prior to 1994 without receiving compensation. She states in her affidavit that:

I regularly worked 50 to 60 hours per week without payment for overtime hours but with the promise that I would be paid for this. In late 1993 or early 1994 I informed Mr. Welch that my daughter was now in college, that I could not afford to continue working overtime without pay, and that if I was not going to be paid for overtime hours I would need to terminate working overtime and obtain a part time job after hours to supplement my income. In April, 1994 I was paid the sum of $10,000.00 from some account (I did not at the time know what account, although I have recently been informed that it was the personal lines operating account) to compensate me for overtime hours worked by me for a number of years for which I had never been compensated.

*Exhibit "A" to Sharon Newsom's Motion for Summary Judgment,* at 5–6.

Rick Welch's affidavit comports with Newsom's and he asserts that he elected, apparently for tax reasons, to designate the $10,000 payment as a gift to Newsom. Plaintiffs attempt to characterize the bonuses Newsom received as proof that she was involved in the scheme to defraud plaintiffs. Plaintiffs assert that the excessiveness of the bonuses, specifically the $10,000 bonus, indicate that Newsom was involved with, aided and abetted in, and profited from the scheme to defraud plaintiffs.

Specifically, with respect to plaintiffs' claims against Newsom, plaintiffs' assert that the "salary" and "bonus" payments were

---

4. Newsom, along with other employees, also received a Christmas bonus each year in the amount of $300–$500.

5. Newsom no longer has her check stubs from 1984–1990 which separate out salary payments from bonus payments. Thus, the record is unclear as to what portion of the total payments she received in those years constituted payments for bonuses.

made to Newsom with insurance premiums belonging to plaintiffs' which AGA, Rick Welch and other defendants collected as trustees for plaintiffs, and then converted and paid to themselves and others including Newsom. As proof that Newsom was aware that her salary and bonus payments were paid to her out of plaintiffs' insurance premiums, plaintiffs offer the evidence that Newsom was a signatory on at least one AGA adjustor account and one Delta adjuster account held with CNB into and from which plaintiff's premiums were commingled with other funds and converted in violation of Arkansas law and the contracts between plaintiffs and AGA and Rick Welch.

In plaintiffs' responses to interrogatories, plaintiffs explain their theory for bringing their claims against Newsom:

> Newsom ... is legally responsible for all of the acts of the other Defendants and co-conspirators and is jointly and severally liable for the damages caused to Plaintiffs thereby. Newsom facilitated AGA, Rick Welch and others in the misappropriation and conversion of insurance premiums belonging to and to be held in trust for Plaintiffs. Newsom conspired with and aided and abetted in the breach of fiduciary duty owed Plaintiffs. Newsom personally profited from the scheme to defraud Plaintiffs by, among other means, receiving payment of "salary" and "bonuses" with Plaintiffs' insurance premiums collected and held in trust for Plaintiffs.... Newsom facilitated, aided and abetted, concealed and conspired with the other Defendants to commingle the insurance premiums belonging to Plaintiffs with other funds, to fail to deposit the premiums in a trust account, and to pay the funds to others rather than remitting to Plaintiffs in violation of Arkansas law and the contracts between Plaintiffs, and AGA and Rick Welch.

*Exhibit "G" to Sharon Newsom's Motion for Summary Judgment,* at 9.

In addition, plaintiffs refer the court to the fact that Newsom worked for AGA for twelve years, receiving payments purportedly for salary and bonuses, from the account into which premiums belonging to and collected for plaintiffs were illegally deposited, commingled, withdrawn, and spent. Plaintiffs assert that Newsom was aware that her salary was paid from this account. Plaintiffs point to the $10,000 bonus that Newsom received on April 27, 1994, and argue that the bonus demonstrates that Newsom was rewarded for her role in the fraud against plaintiffs.

Plaintiffs state that because Newsom was responsible for paying the claims of AGA and Delta, for signing the checks and disbursing funds from the AGA and Delta adjuster accounts, which contained commingled funds belonging to plaintiffs, a reasonable person could infer that Newsom was aware of or involved in the conversion and misappropriation of plaintiffs' money. Further, plaintiffs contend that given Newsom's working arrangements with other co-conspirators, a jury can draw an inference that Newsom, like the others, knew exactly what was going on, participated in the conspiracy and benefited from the fraud. In the alternative, plaintiffs argue, Newsom closed her eyes to the fraudulent actions against plaintiffs. Plaintiffs assert that a question of fact exists as to whether Newsom had knowledge of the fraud.

## II. DISCUSSION

### A. Summary Judgment Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds. *Holloway v. Lockhart,* 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56. The Supreme Court has issued the following guidelines for trial courts to determine whether this standard has been satisfied.

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). *See also AgriStor Leasing v. Farrow,* 826 F.2d 732, 734 (8th Cir.1987); *Niagara of Wisconsin Paper Corp. v. Paper Indus-*

*try Union—Management Pension Fund,* 800 F.2d 742, 746 (8th Cir.1986).

The Eighth Circuit Court of Appeals has advised trial courts that summary judgments should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. U.S.,* 600 F.2d 725, 727 (8th Cir.1979). In *Counts v. M.K.–Ferguson Co.,* 862 F.2d 1338 (8th Cir.1988), the court, reviewing the burdens of the respective parties, stated:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.,* "[to] point[ ] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.,* at 1339, *quoting, City of Mt. Pleasant, Iowa v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted) (brackets in original).

However, the Court of Appeals for this circuit has also held that the court, in ruling on the motion for summary judgment, must give the non-moving party "the benefit of all the reasonable inferences that can be drawn from the underlying facts." *Fischer v. NWA, Inc.,* 883 F.2d 594, 598–99 (8th Cir. 1989) (*citing Trnka v. Elanco Products Co.,* 709 F.2d 1223, 1225 (8th Cir.1983)).

### B. Plaintiffs' Rule 56(f) Motion

■ Plaintiffs' request relief under Rule 56(f) which states:

> [s]hould it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just. Fed.R.Civ.P. 56(f).

"Rule 56(f) protects a party opposing a summary judgment motion who for valid reasons cannot by affidavit—or presumably by any other means authorized under Rule 56(e)—present facts essential to justify his opposition to the motion." 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 2740 at 529–530 (2d ed.1983) (internal quotation marks omitted).

The Eighth Circuit has made it clear that Rule 56 " 'does not require trial courts to allow parties to conduct discovery before entering summary judgment.' " *Duffy v. Wolle,* 123 F.3d 1026, 1040 (8th Cir.1997) (*quoting United States v. Light,* 766 F.2d 394, 397 (8th Cir.1985) (*per curiam* )).

> Rather, under Rule 56(a), a motion for summary judgment can be filed *at any time* after twenty days from the commencement of the action or service of the motion on the other party. The party who is faced with a summary judgment motion before he has conducted discovery may, under Rule 56(f), request the court to postpone ruling on the motion until he conducts some discovery. However, ... Rule 56(f) is not a shield that can be raised to block a motion for summary judgment without even the slightest showing by the opposing party that his opposition is meritorious. A party invoking its protections must do so in good faith by affirmatively demonstrating why he cannot respond to a movant's affidavits as otherwise required by Rule 56(e) and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. Where a party fails to carry his burden under Rule 56(f), postponement of a ruling on a motion for summary judgment is unjustified.

*Id. (quoting Light,* 766 F.2d at 397–98) (quotations, citations, footnote and alterations omitted).

Plaintiffs assert that discovery in this case is in its very early stages and that no person has been deposed and key documents remain

unproduced. In addition, plaintiffs contend that Newsom's responses to plaintiffs' interrogatories and document requests are deficient. Plaintiffs state that they cannot fully respond to Newsom's motion until additional discovery is completed.

In support of their request for relief, plaintiffs offer the affidavit of Richard P. Salgado, one of the counsel of record for plaintiffs. Mr. Salgado states in his affidavit that plaintiffs need additional time to "depose Newsom and her co-workers, including the Defendants in this action and the affiants to Newsom's Motion for Summary Judgment, to more fully establish Newsom's knowledge of the wrongful conduct committed against Plaintiffs, and the extent of her participation in the conduct." *Affidavit of Richard P. Salgado*, at ¶ 3. Specifically, plaintiffs assert that "[t]hrough these depositions, Plaintiffs will have an opportunity to discover how deeply engaged and knowledgeable Newsom was concerning the efforts to commingle, convert and misappropriate insurance premiums which were to be collected, held in trust for and remitted to Plaintiffs." *Id.* at ¶ 4.

In addition, plaintiffs contend that discovery will provide them with information concerning Newsom's access to AGA records and that such information bears directly on the issue of Newsom's knowledge of the fraudulent scheme to defraud plaintiffs. *Id.* at ¶ 5. Plaintiffs assert that through discovery from non-party financial institutions, they will be able to determine the amount of plaintiffs' insurance premiums Newsom received over the 12 year period that she worked at AGA. *Id.* at ¶ 6.

We find Mr. Salgado's affidavit unpersuasive. First, in the previous action of *Associated Insurance Management Corp. v. Arkansas General Agency, Inc.*, plaintiffs deposed the following defendants: Al E. Bradley,[6] Larry H. Putman, Donald Maurice Coleman, and William R. Beason. Thus, plaintiffs have had an opportunity to depose some of the defendants in this action regarding the fraud committed against plaintiffs. Furthermore, plaintiffs engaged in substantial discovery in the previous litigation, participated in a 10 day trial, and presumably had to present evidence to the jury on exactly how the scheme to defraud plaintiffs was carried out by Rick Welch, AGA and Delta. In other words, plaintiffs are well informed about the fraudulent actions at issue in this case and should be able to demonstrate, at the very least, a genuine issue of material fact as to whether Newsom is responsible for any of the fraud committed against plaintiffs with the evidence they have accumulated at this time.

In addition, on September 23, 1997, plaintiffs moved this court for an extension of time in which to respond to Newsom's summary judgment motion. Plaintiffs stated that they needed additional time to evaluate Newsom's motion. We granted plaintiffs request and gave them an additional fourteen days to respond to Newsom's motion.

Plaintiffs supplemented their Rule 56(f) motion on October 30, 1997, with additional information which they believe demonstrates that Newsom participated in the fraud. Plaintiffs offer an excerpt of Rick Welch's deposition, taken in relation to his pending bankruptcy case, where Mr. Welch was questioned regarding who was authorized to transfer money from AGA's general account into AGA's adjuster's account:

Q: Arkansas General Adjusters is just a bank account?

A: Yes.

Q: Who are the signatories on that account?

A: Myself, I believe. I haven't signed a check out of it in years, and Sharon Newsom, probably.

\* \* \*

Q: [b]etween Arkansas General and Arkansas General Adjusters there were several transfers indicated in the monthly reports....

A: Sure.

Q: Who makes that decision to transfer money back and forth between those accounts.

---

6. Al E. Bradley was originally a co-defendant in this action, however, he was administratively terminated without prejudice on August 29, 1997.

A: Sharon Newsom, the lady that handles the claims.

*Deposition of Rick Welch,* at 60–61.

Plaintiffs allege that Rick Welch's testimony shows that Newsom was the person who decided to transfer funds between the accounts, and thus, she must have been involved in the scheme to defraud plaintiffs. Plaintiffs state that Welch's testimony supports their motion under Rule 56(f) and establishes that a genuine issue of material fact exists as to whether Newsom was a part of the scheme to defraud plaintiffs. We disagree.

All Welch's deposition testimony indicates is that Newsom "decided" when funds needed to be transferred from the AGA general account to the AGA adjuster account. This testimony does not contradict Newsom's statements in her affidavit nor does it counter Welch's affidavit. As a claims supervisor, Newsom evaluated, adjusted, negotiated, settled and supervised the defense of insurance claims on behalf of AGA, Delta and their client companies. *Exhibit "A" to Sharon Newsom's Motion for Summary Judgment,* at 1–2. Newsom admits that when she made claim payments on behalf of the above companies, she would issue drafts drawn on the AGA and Delta adjuster accounts. *Id.* However, she contends that after the drafts were issued, Newsom would advise Larry Putman (at AGA) or Greg Welch (at Delta) that funds needed to be transferred into the AGA or Delta adjuster account in order to cover the draft. *Id.* at 2. Both Larry Putman's and Greg Welch's affidavits state that it was their responsibility to deposit sufficient funds into the adjuster accounts and that Newsom did not at any time have anything to do with the management, accounting or bookkeeping of AGA or Delta. *See Exhibit "B" and "E" to Sharon Newsom's Motion for Summary Judgment.* Thus, while Newsom may have been responsible for determining when money needed to be deposited into an adjuster account in order to cover a payment on an insurance claim, she has never stated, nor is there any evidence that indicates, that she made deposits to or transfers from the AGA or Delta general accounts into the AGA or Delta adjuster accounts.

As the court restated in *Duffy,* "Rule 56(f) does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of a . . . violation." *Id.,* 123 F.3d at 1041 (internal quotation marks and citations omitted). On the contrary, plaintiffs must demonstrate that postponement of our ruling on Newsom's motion will enable them, by discovery or otherwise, to rebut Newsom's showing of an absence of a genuine issue of material fact.

Although plaintiffs' commenced this action on June 4, 1997, there is nothing in the record that indicates plaintiffs have noticed any depositions in this case. Plaintiffs have taken no steps over the five months that this case has been pending to obtain either Newsom's or the other defendants' depositions. We are hard pressed to believe that plaintiffs have not had adequate time for discovery in this case. "A party cannot forestall summary judgment by arguing that it has not had an opportunity to complete its discovery when it has not pursued its discovery rights with vigor." *Scosche Industries, Inc. v. Visor Gear Inc.,* 121 F.3d 675, 682 (Fed.Cir. 1997) (citations omitted).

We conclude that plaintiffs have failed to demonstrate how additional discovery would assist them in establishing that Newsom facilitated, aided and abetted, concealed or conspired with the other defendants to defraud plaintiffs. Further, we believe that plaintiffs have had sufficient time to conduct discovery in this case. Therefore, we deny plaintiffs' request for relief under Rule 56(f).

### C. Newsom's Summary Judgment Motion

Newsom contends that there is no factual or legal basis for plaintiffs' claim that she participated in a scheme or conspiracy with, or that she aided and abetted, Rick Welch, AGA or Delta in any effort to defraud plaintiffs. Plaintiffs contend that there is evidence that Newsom had knowledge of the fraud and other torts committed against plaintiffs.

Plaintiffs assert that the affidavits Newsom offered in support of her summary judgment motion are unreliable. The affiants (who are also alleged co-defendants and co-conspirators), Larry H. Putman, Al E. Bradley, Rick Welch, and Greg Welch, all state that Newsom was not involved with transfer-

ring money from the AGA or Delta general account to the AGA or Delta adjuster account and that she had no knowledge that any of plaintiffs' premiums were being commingled or converted. *See generally, Exhibits B, C, D, and E of Sharon Newsom's Motion for Summary Judgment.* Plaintiffs contend that Newsom's affidavits do not show that an *"absence of evidence"* exists as to whether she had knowledge of the wrongful conduct. *Plaintiffs' Response to Defendant Newsom's Motion for Summary Judgment and Request for Relief Under Rule 56(f),* at 5.

Plaintiffs assert that the affidavits only present evidence by way of denials that Newsom was not aware of the fraud. Plaintiffs argue that the general denials are not enough to warrant summary judgment in this case. While we agree that the affiants in this case may have ulterior motives for making their statements, we believe that Newsom has offered other credible evidence which supports her motion.

### Plaintiffs' First Claim for Relief

Plaintiffs allege that Newsom participated in a civil conspiracy to defraud plaintiffs. Specifically, plaintiffs contend that Newsom in combination with the other defendants agreed by words or conduct to accomplish the unlawful objective of commingling and converting plaintiffs' insurance premiums through fraud, deceit, breach of fiduciary duty, breach of contract and conversion.

Civil conspiracy has been defined in Arkansas as "a combination of two or more persons to accomplish a purpose that is unlawful, or oppressive, or to accomplish some purpose, not in itself unlawful, by unlawful, oppressive, or immoral means." *Chalmers v. Toyota Motor Sales, USA, Inc.,* 326 Ark. 895, 905–06, 935 S.W.2d 258, 264 (1996) (citation omitted).

Newsom contends that she cannot be implicated in a conspiracy to defraud plaintiffs on the sole basis of her employment at AGA. Newsom asserts that there is no evidence that she had any knowledge of the alleged acts of Rick Welch or any of the other named defendants in commingling or converting plaintiffs' premiums. Newsom further asserts that the only acts that plaintiffs have alleged are acts that she performed in the

ordinary course of her business as a claims supervisor. Newsom argues that plaintiffs are attempting to hold her liable for conspiracy to commit fraud and, as such, plaintiffs must be able to prove that Newsom knowingly and intentionally committed fraud or engaged in a conspiracy to commit fraud. Newsom asserts that because she was an employee of AGA, acting in the ordinary course of her employment, she cannot be guilty of conspiring with her corporate employer or other corporate employees solely by reason of her association with the corporation.

Under the intracorporate conspiracy doctrine, "a corporation cannot conspire with itself through its agents when the acts of the agents are within the scope of their employment." *Larson by Larson v. Miller,* 76 F.3d 1446, 1456 n. 6 (8th Cir.1996) (citation omitted). However, there is a general exception to the intracorporate conspiracy doctrine that states:

> [w]hen the interests of principal and agents diverge, and the agents at the time of the conspiracy are acting beyond the scope of their authority or for their own benefit rather than that of the principal, they may be legally capable of engaging in a [ ] ... conspiracy with their corporate principal.

*Pink Supply Corp. v. Hiebert, Inc.,* 788 F.2d 1313, 1317 (8th Cir.1986) (citations omitted).

Plaintiffs contend that the intracorporate conspiracy doctrine does not apply to the present facts because Newsom's co-conspirators include not only AGA (her corporate employer) but other individuals who were also agents of AGA. In other words, plaintiffs argue that although Newsom cannot be found to have conspired with AGA, she may be found liable for conspiring with other agents or employees of AGA. Plaintiffs reliance on this courts' previous decision in *Ripplemeyer v. National Grape Co-op. Ass'n, Inc.,* 807 F.Supp. 1439 (W.D.Ark.1992) for such a proposition is misplaced. In *Ripplemeyer,* we recognized the general exception to the intracorporate conspiracy doctrine that the Eighth Circuit had outlined in *Pink Supply, i.e.* when agents of a corporation are acting outside the scope of their employment,

they may be legally capable of conspiring with their corporate principal *Id.* at 1459. We did not hold and we do not believe that the law states that two employees of a corporation, acting within the scope of their employment, are legally capable of engaging in a conspiracy with their corporate principal. In such a situation, the employees are merely acting for the corporation, and according to the intracorporate conspiracy doctrine, a corporation cannot conspire with itself through its agents.

■ Thus, plaintiffs must demonstrate that a genuine issue of material fact exists as to whether Newsom was acting outside the scope of her employment or for her own benefit. If Newsom was acting within the scope of her employment, then the intracorporate conspiracy doctrine bars plaintiffs from bringing their claim for civil conspiracy against Newsom.

Newsom contends that at all relevant times she was acting within the scope of her employment. As claims supervisor, she was responsible for settling insurance claims. Thus, it was clearly within the scope of Newsom's employment with AGA to evaluate, negotiate, adjust, settle and pay insurance claims. There is no evidence that indicates Newsom acted outside the scope of her employment during her twelve years at AGA. Furthermore, there is no evidence that demonstrates that Newsom was, at any time, acting for her own benefit. There is nothing suspicious or unusual about an employee who receives, as part of her compensation package, periodic bonuses for performance. While the $10,000 bonus may be out of the ordinary, it simply does not rise to the level of creating a genuine issue of material fact on the issue of whether Newsom was acting outside the scope of her employment or for her own benefit.

We therefore conclude that plaintiffs have failed to meet their burden with respect to their claim that Newsom conspired with AGA, Delta or Rick Welch to defraud plaintiffs. The court believes that plaintiffs' claim is barred by the intracorporate conspiracy doctrine and does not fit within the general exception. Plaintiffs' factually unsupported allegations that Newsom conspired with AGA, Delta, Rick Welch and the other defendants are without merit. Therefore, New-

som's motion for summary judgment is granted on plaintiffs' first claim for relief.

**Plaintiffs' Second Claim for Relief**

■ Plaintiffs allege that Newsom and the other defendants intentionally, knowingly and fraudulently committed acts which misled and deceived plaintiffs. Under Arkansas law, plaintiffs must prove the following elements in order to establish a claim for fraud against Newsom: (1) a false representation of a material fact; (2) knowledge or belief that the representation was false; (3) intent to induce reliance on the part of the plaintiffs; (4) justifiable reliance by plaintiffs; and (5) resulting damage to plaintiffs. *Sexton Law Firm, P.A. v. Milligan,* 329 Ark. 285, 299, 948 S.W.2d 388, 395–96 (1997) (citations omitted).

In viewing the facts in a light most favorable to plaintiffs, we find no evidence that establishes a genuine issue of material fact exists as to whether Newsom committed fraud against plaintiffs. Plaintiffs have failed to come forward with any evidence that shows Newsom had any knowledge of the scheme to defraud plaintiffs. Not one person has stated that Newsom was involved in or aware of the scheme to commingle and convert plaintiffs' insurance premiums. In fact, James Sternberg, a vice-president and treasurer of both plaintiff corporations, stated in his deposition that to his knowledge Newsom was not even aware of the fact that plaintiffs' insurance premiums were not being remitted to plaintiffs on a timely basis. *See generally, Exhibit "H" to Sharon Newsom's Motion for Summary Judgment.* Mr. Sternberg stated that he never discussed the problems regarding plaintiffs' insurance premiums with Newsom and considered the matter to be confidential, *i.e.* only to be discussed between him and Rick Welch.

Further, not one document shows that Newsom had knowledge of the fact that the insurance premiums were being used by AGA, Delta and Rick Welch to improperly finance the operations of the business and/or to support Rick Welch's extravagant lifestyle.

The fundamental element of any claim for fraud is intent. In order to rebut Newsom's summary judgment motion, plaintiffs must come forward with some evidence that dem-

onstrates that a genuine issue of material fact exists as to whether Newsom had any knowledge of the scheme to defraud plaintiffs. Plaintiffs mere allegations that Newsom committed these acts are insufficient to withstand Newsom's motion for summary judgment. Therefore, Newsom's motion is granted on plaintiffs' second claim for relief.

### Plaintiffs' Third Claim for Relief

■ Plaintiffs allege that Newsom along with the other defendants converted plaintiffs' insurance premiums which defendants knew belonged to plaintiffs. Arkansas defines conversion as "the exercise of dominion over property in violation of the rights of the owner or person entitled to possession." *City Nat'l Bank v. Goodwin*, 301 Ark. 182, 187, 783 S.W.2d 335, 337 (1990) (internal quotation marks and citations omitted). Clearly, conversion can only result from "conduct intended to affect the chattel." W. Page Keeton, *et al.*, *Prosser and Keeton on the Law of Torts*, § 15 at 92 (5th ed.1984). "The intent required is not necessarily a matter of conscious wrongdoing. It is rather an intent to exercise dominion or control over the [chattel] which is in fact inconsistent with the plaintiff's rights." *Id.* (footnote omitted).

Although Newsom did intentionally exercise dominion and control over the funds paid to her by AGA and Rick Welch, she is not a converter because she did not exercise such control in violation of plaintiffs' rights. For example, a bona fide purchaser for value of fraudulently obtained property becomes a converter when she takes possession of the fraudulently obtained property because the elements of conversion are met and a mistake of law or fact is no defense. *Id.* at 93. However, an exception is recognized in the case of money or certain negotiable instruments because title is legally transferred to the person who takes possession. *Id.* at 94, *See also*, Restatement (Second) of Torts § 229 at 447–48 cmt. d (1965). Thus, plaintiffs cannot successfully assert a claim for conversion against Newsom, absent some showing that she accepted the salary and bonus payments from AGA knowing that the source of such payments was converted funds belonging to plaintiffs, because she obtained legal title to the money when it was paid to her and her exercise of dominion over the money was not in violation of plaintiffs'

rights. Therefore, we grant Newsom's motion for summary judgment on plaintiffs' third claim for relief.

### Plaintiffs' Fourth Claim for Relief

■ Plaintiffs allege that Newsom and other defendants were negligent in that they breached their duty of care to plaintiffs by commingling and converting plaintiffs' insurance premiums. Specifically, plaintiffs allege that Newsom owed a duty of care to plaintiffs to ensure that the insurance premiums were held in trust by AGA, Delta and Rick Welch, kept separate, not used for any other purpose, and remitted to plaintiffs when due.

Newsom contends that there is no evidence that demonstrates that she breached her duty of care to the plaintiffs. While we agree with Newsom that there is a complete absence of evidence that she was negligent in any way, we also find that there is no evidence that indicates that Newsom even owed plaintiffs such a duty of care. We can find no case that stands for the proposition that an employee owes a legal duty of care to the person or business with which his or her corporate employer contracts and plaintiffs point us to no such case. Absent some sort of showing by plaintiffs that Newsom had any knowledge that AGA, Delta or Rick Welch were improperly using and or converting plaintiffs' premiums, Newsom did not owe plaintiffs a legal duty of care to ensure that defendants did not engage in fraud. It was AGA, Delta and Rick Welch who breached their duty of care, and plaintiffs' successfully obtained a judgment against those parties in the previous litigation. While plaintiffs are entitled to bring a claim against Newsom for her actions in the fraudulent scheme against plaintiffs, they must have a basis for their claims. Newsom's motion for summary judgment is granted on plaintiffs' fourth claim for relief.

### Plaintiffs' Fifth and Sixth Claims for Relief

■ Plaintiffs allege that Newsom and other defendants breached their fiduciary duty to plaintiffs and that defendants knowingly and substantially aided, encouraged, assisted and/or cooperated with one another and with AGA, Delta and Rick Welch, and their employees and agents to breach their

fiduciary duties to plaintiffs. Plaintiffs contend that as employees of AGA and Delta the defendants became fiduciaries of plaintiffs and were obligated to exercise AGA's and Delta's fiduciary duties to collect insurance premiums for plaintiffs and to hold the premiums in trust and to remit such premiums to plaintiffs when due.

We are hard pressed to find that Newsom had a fiduciary relationship with plaintiffs. There is no evidence that Newsom owed plaintiffs a fiduciary obligation. It is plaintiffs' burden to establish that a genuine issue of material fact exists as to whether such a relationship exists. Obviously, Newsom does not owe plaintiffs fiduciary duties merely because she was employed by AGA.

Even if plaintiffs could establish that a fiduciary relationship exists, there is no evidence that Newsom breached her fiduciary duty or that she conspired with anyone else to breach their fiduciary duties to plaintiffs. As we have stated several times in the opinion, there is no evidence that Newsom had any knowledge or participated in any scheme to defraud plaintiffs. Thus, Newsom's motion for summary judgment on plaintiffs' fifth and sixth claims for relief is granted.

### Plaintiffs' Seventh Claim for Relief

Plaintiffs allege that Newsom knowingly received substantial payments from AGA which consisted of insurance premiums belonging to plaintiffs. Plaintiffs contend that by reason of defendants' actions, plaintiffs are entitled to trace the payments to Newsom to their present location including Newsom's bank accounts and other personal assets.

Newsom contends that plaintiffs have already obtained judgments awarding them compensatory and punitive damages from Rick Welch and AGA for misappropriating their money, and are now barred under the doctrine of election of remedies from bringing a claim against Newsom. Newsom asserts that plaintiffs are pursuing inconsistent remedies.

We will not decide the issue of whether plaintiffs' attempt to impose a constructive trust is barred by the election of remedies doctrine because we believe plaintiffs' claim is barred for another reason.

> [A] constructive trust is imposed where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. The duty to convey the property may arise because it was acquired through fraud, duress, undue influence or mistake, breach of a fiduciary duty, or wrongful disposition of another's property.

*Scollard v. Scollard,* 329 Ark. 83, 89–90, 947 S.W.2d 345, 348 (1997) (citations omitted).

There is no evidence that Newsom acquired plaintiffs' premiums by way of fraud, duress, undue influence, mistake or breach of fiduciary duty. On the contrary, she was legally entitled to compensation for her services and will not be unjustly enriched[7] if she is permitted to retain such payments.

To establish a constructive trust under Arkansas law, a party must show a confidential relationship existed between the parties or that intentional fraud existed. *Thom v. Geyer,* 254 Ark. 716, 718, 497 S.W.2d 689, 691 (1973) (citation omitted). As stated above, there is no evidence that a fiduciary relationship existed between Newsom and plaintiffs and plaintiffs have failed to prove any fraud on the part of Newsom. Therefore, we conclude that Newsom is entitled to summary judgment on plaintiffs' seventh claim for relief.

### Plaintiffs' 8th, 9th, 10th, 11th and 12th Claims for Relief

The allegations contained in plaintiffs' 8th, 9th, 10th, 11th and 12th claims for relief do not allege any wrongdoing on the part of Newsom. Thus, we will not address these claims.

### Plaintiffs' Thirteenth Claim for Relief

Plaintiffs allege that Newsom has been unjustly enriched by all amounts she received from AGA, Delta and Rick Welch's accounts into which plaintiffs' insurance premiums were deposited, commingled and converted.

---

7. See our discussion *infra* on unjust enrichment.

"To find unjust enrichment, a party must have received something of value, to which he was not entitled and which he must restore." *Coleman's Serv. Ctr., Inc. v. F.D.I.C.*, 55 Ark.App. 275, 299, 935 S.W.2d 289, 302 (1996) (*citing Dews v. Halliburton Indus., Inc.*, 288 Ark. 532, 536, 708 S.W.2d 67, 69 (1986)). "However, there must be some operative act, intent, or situation to make the enrichment unjust and compensable." *Sparks Regional Medical Ctr. v. Blatt*, 55 Ark.App. 311, 317, 935 S.W.2d 304, 306 (1996) (citation omitted). "One who is free from fault cannot be held to be unjustly enriched merely because he has chosen to exercise a legal or contract right." *Id.* (citation omitted).

Arkansas law is clear on the issue that in the realm of unjust enrichment, the word "unjust" means "unlawful." "One is not unjustly enriched by receipt of that to which he is legally entitled. \*\*\* No recovery of money received can be based upon unjust enrichment when the recipient can show a legal or equitable ground for keeping it." *Halvorson v. Trout*, 258 Ark. 397, 403, 527 S.W.2d 573, 577 (1975) (*quoting Whitley v. Irwin*, 250 Ark. 543, 550–51, 465 S.W.2d 906, 910–11 (1971)). *See also, Jackson County Grain Drying Coop. v. Newport Wholesale Electric, Inc.*, 9 Ark.App. 41, 46, 652 S.W.2d 638, 640 (1983) (no one shall be allowed to unjustly enrich himself at the expense of another; the word "unjustly" means "unlawfully").

In this case, Newsom was an employee of AGA and was entitled to compensation for her services. There is no evidence that demonstrates that she was not entitled to her salary and bonus payments. Thus, Newsom has met her burden of pointing out to this court that no genuine issue of material fact exists as to whether unjust enrichment is a proper remedy in this case. Plaintiffs have come forward with no evidence which demonstrates that they are entitled to an unjust enrichment award. Therefore, we grant Newsom's motion for summary judgment on plaintiffs' thirteenth claim for relief.

### D. Rule 37(c)(1) Request

■ Newsom requests that this court apply Federal Rules of Civil Procedure 37(c)(1) in ruling on her motion for summary judgment. Rule 37(c)(1) states in relevant part:

[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) shall not, unless such failure is harmless, be permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.

Fed.R.Civ.P. 37(c)(1). Newsom asserts that plaintiffs refusal to respond in good faith to her interrogatories is "so egregious that invoking this provision is warranted." *Brief in Support of Sharon Newsom's Motion for Summary Judgment*, at 32 (footnote omitted).

Plaintiffs contend that Newsom never complained to plaintiffs concerning plaintiffs' responses to her interrogatories as required by Rule 7.2(g) of the Local Rules for the Eastern and Western Districts of Arkansas and Federal Rule of Civil Procedure 37(a)(2)(A) and (B). Rule 37(a)(2)(A) states that

[i]f a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.

Fed.R.Civ.P. 37(a)(2)(A).

While it is true that under Rule 37(a) and Local Rule 7.2(g) parties must attempt to resolve their disagreements without intervention of the court prior to making a motion to compel or for sanctions, the sanction imposed by Rule 37(c)(1) is automatic "in the sense that there is no need for the opposing party to make a motion to compel disclosure ... as a predicate for imposition of the sanction of exclusion." 8A Charles A. Wright, Arthur R. Miller, Richard L. Marcus, *Federal Practice and Procedure*, § 2289.1 at 704 (2d ed.1994).

In view of the fact that we are granting Newsom's motion for summary judgment on all plaintiffs' claims, Newsom's request for Rule 37(c)(1) sanctions for exclusion is moot. We also decline to impose monetary sanctions for attorneys fees and costs because we

do not believe that Rule 37 is the appropriate vehicle for doing that under the circumstances of this case.

However, this court believes that the claims made against this defendant are so lacking in merit that it has considered the imposition of Rule 11 sanctions against plaintiffs on its own motion as permitted by that rule.[8] It appears that it is at least possible (if not probable) that plaintiffs, finding themselves unable to collect the substantial judgments received against the real culprits, are casting about to find someone who can pay. The court is convinced that this defendant should not have been a party to this lawsuit because plaintiffs do not have even a tenuously colorable claim against her. The record indicates that she was nothing more than an ordinary employee of AGA receiving rather ordinary remuneration for her services, and plaintiffs could have and should have discovered that before this suit was filed and this defendant was made to endure the natural trauma of a lawsuit and to incur the substantial expenses that were undoubtedly incurred. However, the court has concluded that it will not further consider imposition of sanctions at this stage of the proceedings because it does not desire to derail and delay this litigation while that issue is decided. The court will probably consider the matter further at some point prior to the final disposition of this case, and it is likely that, at some point, plaintiffs will be directed to show cause why sanctions should not be imposed.

### III. CONCLUSION

Based on the above analysis, this court believes that no genuine issues of material fact exist as to whether Newsom was involved in the scheme to defraud plaintiffs. Therefore, defendant Newsom's motion for summary judgment on each of plaintiffs' claims for relief is hereby granted.

---

**8.** Because defendant has apparently not complied with the notice provisions of Rule 11(b)(1), it is not likely that she can move for sanctions under the rule.