IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
April 12, 2000 Session

## H & M ENTERPRISES, INC. v. KATHY L. MURRAY, ET AL.

Appeal from the Circuit Court for Wilson County
No. 10325     Clara W. Byrd, Judge

No.  M1999-02073-COA-R3-CV - Filed April 17, 2002

This appeal involves a spouse's liability for money that the other spouse embezzled from her employer.  When the employer discovered the embezzlement, it filed suit in the Circuit Court for Wilson County against the embezzler and her spouse to recover $196,231.69.  After hearing the evidence without a jury, the trial court awarded the employer a judgment against the embezzler and her spouse for $196,231.69 and also awarded the employer a $78,500 judgment for punitive damages against the embezzler.   The embezzler's spouse asserts on this appeal that the evidence preponderates against the trial court's determination that he should be jointly and severally liable for the embezzled funds.  We agree and, therefore, reverse the judgment against the embezzler's spouse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed In Part**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Richard J. Brodhead, Lebanon, Tennessee, for the appellant, Larry D. Murray.

Brody N. Kane and Frank Lannom, Lebanon, Tennessee, for the appellee, H & M Enterprises, Inc. through its president, David Marks.

## OPINION

### I.

Kathy L. Murray began working as the secretary, bookkeeper, and office manager of H & M Enterprises, Inc. in October 1990.  H & M Enterprises is a general contractor specializing in excavation work as well as commercial and residential building.  Ms. Murray was responsible for paying the company's bills and reconciling the company's bank statements, and, accordingly, she had unsupervised access to the company's checkbook.  Beginning in January 1994, Ms. Murray began embezzling funds from H & M Enterprises by forging checks and converting the company's money to her own use.

H & M Enterprises learned of Ms. Murray's embezzlement in the fall of 1997 when the chief of the Lebanon Police Department received an anonymous letter stating that Ms. Murray "had been doing some stealing" from H & M Enterprises. It eventually determined that Ms. Murray had embezzled $169,231.69. In addition to pursuing criminal charges against Ms. Murray, H & M Enterprises filed suit in December 1997 in the Circuit Court for Wilson County against Ms. Murray and Larry D. Murray, her husband, seeking to recover the embezzled funds and punitive damages. Following a trial in June 1999, the trial court found that the Murrays were jointly and severally liable for converting $169,231.69 belonging to H & M Enterprises and accordingly awarded a $169,231.69 judgment against the Murrays. It also awarded a $78,500 judgment against Ms. Murray for punitive damages.

Mr. Murray filed a motion for new trial asserting that the evidence did not support the judgment against him. After the trial court denied his motion, Mr. Murray perfected this appeal. Ms. Murray has not appealed.

## II.
### STANDARD OF REVIEW

Mr. Murray's sole argument on appeal is that the evidence preponderates against the trial court's conclusion that he somehow participated in or benefitted from Ms. Murray's fraudulent conversion of funds belonging to H & M Enterprises. The standard this court uses to review the results of bench trials is well-settled. With regard to a trial court's findings of fact, we will review the record de novo and will presume that the findings of fact are correct "unless the preponderance of the evidence is otherwise." We will also give great weight to a trial court's factual findings that rest on determinations of credibility. *In re Estate of Walton*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). However, if the trial judge has not made a specific finding of fact on a particular matter, we will review the record to determine where the preponderance of the evidence lies without employing a presumption of correctness. *Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

Reviewing findings of fact under Tenn. R. App. P. 13(d) requires an appellate court to weigh the evidence to determine in which party's favor the weight of the aggregated evidence falls. There is a "reasonable probability" that a proposition is true when there is more evidence in its favor than there is against it. Thus, the prevailing party is the one in whose favor the evidentiary scale tips, no matter how slightly. *Parks Props. v. Maury County*, ___ S.W.3d ___, ___, 2001 WL 935324, at *4 (Tenn. Ct. App. Aug. 17, 2001); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

Tenn. R. App. P. 13(d)'s presumption of correctness requires appellate courts to defer to a trial court's findings of fact. *Fell v. Rambo*, 36 S.W.3d 837, 846 (Tenn. Ct. App. 2000). Because of the presumption, an appellate court is bound to leave a trial court's finding of fact undisturbed unless it determines that the aggregate weight of the evidence demonstrates that a finding of fact other than the one found by the trial court is more probably true. *Parks Props. v. Maury County*, ___ S.W.3d at ___, 2001 WL 935324, at *4. Thus, for the evidence to preponderate against a trial

court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000).

The presumption of correctness in Tenn. R. App. P. 13(d) applies only to findings of fact, not to conclusions of law. Accordingly, appellate courts review a trial court's resolution of legal issues without a presumption of correctness and reach their own independent conclusions regarding these issues. *Johnson v. Johnson*, 37 S.W.3d 892, 894 (Tenn. 2001); *Nutt v. Champion Int'l Corp.*, 980 S.W.2d 365, 367 (Tenn. 1998); *Knox County Educ. Ass'n v. Knox County Bd. of Educ.*, 60 S.W.3d 65, 71 (Tenn. Ct. App. 2001); *Placencia v. Placencia*, 48 S.W.3d 732, 734 (Tenn. Ct. App. 2000).

Appellate courts review a trial court's finding of fact as a legal matter in one circumstance. When a finding of fact is based on undisputed evidence that can reasonably support only one conclusion, we will review that finding on appeal without Tenn. R. App. P. 13(d)'s presumption of correctness. *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d at 596; *Hamblen County Educ. Ass'n v. Hamblen County Bd. of Educ.*, 892 S.W.2d 428, 431 (Tenn. Ct. App. 1994); *Tennessee Farmers Mut. Ins. Co. v. American Mut. Liab. Ins. Co.*, 840 S.W.2d 933, 936 (Tenn. Ct. App. 1992).

## III.

H & M Enterprises' claim against Mr. Murray is essentially one for conversion. It asserted that Mr. Murray should be held jointly and severally liable for the embezzled funds because he had either conspired or personally assisted his wife in embezzling the funds or because he had "[ratified] the intentional and fraudulent actions of his wife . . . so as to establish an agency relationship," making her his agent in embezzling the company's funds. Thus, to recover from Mr. Murray, H & M Enterprises had the burden of proving each of the elements of a conversion claim. *Nunley v. Nunley*, 925 S.W.2d 538, 541 (Tenn. Ct. App. 1996).

## A.

Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. *Barger v. Webb*, 216 Tenn. 275, 278, 391 S.W.2d 664, 665 (1965); *Lance Prods., Inc. v. Commerce Union Bank*, 764 S.W.2d 207, 211 (Tenn. Ct. App. 1988). Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Kinnard v. Shoney's, Inc.*, 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977).

Property may be converted in three ways. First, a person may personally dispossess[1] another of tangible personalty. Restatement (Second) of Torts § 223(a) (1965). Second, a person may dispossess another of tangible property through the active use of an agent. *See, e.g.*, *McCall v. Owens*, 820 S.W.2d 748, 751 (Tenn. Ct. App. 1991); 1 Stuart M. Speiser et al., *The American Law of Torts* § 3.4 (1983) ("*The American Law of Torts*") (stating that "those who ratify and adopt acts of a wrongdoer done for their benefit" may be liable). Third, under certain circumstances, a person who played no direct part in dispossessing another of property, may nevertheless be liable for conversion for "receiving a chattel."[2] Restatement (Second) of Torts § 223(d).

Two or more persons may be held jointly and severally liable for damages in tort when they intentionally unite in the wrongful act causing the injury. *Hale v. Knoxville*, 189 Tenn. 491, 502, 226 S.W.2d 265, 269 (1949). Joint and several liability may be imposed on all (1) who actively participate in the tortious acts, (2) who intentionally aid the acts, or (3) who ratify and adopt tortious acts done for their benefit. *Hux v. Butler*, 339 F.2d 696, 699 (6th Cir. 1964); 1 *The American Law of Torts* § 3:4. In appropriate circumstances, joint and several liability is appropriate for conversion claims. *See*, *e.g.*, *Breeden v. Elliott Bros.*, 173 Tenn. 382, 386-87, 118 S.W.2d 219, 220 (1938).

**B.**

The record contains no direct evidence that Mr. Murray assisted his wife in embezzling money from H & M Enterprises or even that he knew what she was doing. It is essentially uncontradicted that he has a serious drinking problem and that Ms. Murray had exclusive control over the family's finances. Mr. Murray conceded that "I have never looked at a bank statement . . . [and] I don't ever see the bank book. She [Ms. Murray] wouldn't trust me with it to begin with."

A bulk of the checks that Ms. Murray forged appear to be for personal items bought for herself or to defray credit card bills run up by her personal spending. While it is true that $99,810.46 of the checks forged by Ms. Murray were made payable to "Larry Dale Murray," there is no evidence that he knew of or endorsed these checks. In fact, it is essentially undisputed that Ms. Murray never presented these checks to Mr. Murray and that she forged his endorsement on the checks before depositing the embezzled funds in the Murrays' joint account.

The trial court found (1) that Ms. Murray alone embezzled the money from H & M Enterprises, (2) that "there is no evidence that Mr. Murray either intentionally misrepresented any existing facts or that he had any direct knowledge of the misconduct by his wife," and (3) that "[t]here's no evidence that Mr. Murray intended to defraud the company in any way." The evidence fully supports these findings, and, therefore, Mr. Murray cannot be held liable for conversion on the theory that he was personally involved with embezzling H & M Enterprises' funds. Accordingly,

---

[1] "Dispossess" means to intentionally take tangible personal property without the owner's consent and includes obtaining possession by fraud. Restatement (Second) of Torts § 221.

[2] Receiving a chattel means to accept it from an intermediary, who is not an agent, with the intent to acquire it away from the owner. Restatement (Second) of Torts § 229; *see, e.g.*, *Huffman v. Hughlett*, 79 Tenn. 549, 555 (1883).

to hold Mr. Murray liable for conversion, H & M Enterprises must prove either that Ms. Murray was acting as Mr. Murray's agent or that Mr. Murray ratified Ms. Murray's embezzlement.

The law does not deem spouses to be each other's agent for all purposes. *See Hammond v. Herbert Hood Co.*, 31 Tenn. App. 683, 691, 221 S.W.2d 98, 102 (1948). Accordingly, the marital relationship alone does not render one spouse liable for the other spouse's fraudulent acts. Persons seeking to use an agency theory to impose liability on one spouse for the acts of the other spouse must prove that the passive spouse ratified the other's fraudulent acts by accepting or retaining the benefit of the acts knowing they were tainted by fraud. *Dodson v. Anderson*, 710 S.W.2d 510, 512 (Tenn. 1986); *Werne v. Sanderson*, 954 S.W.2d 742, 746 (Tenn. Ct. App. 1997); *see also Ware & Wingate Co. v. Wingate*, 495 So. 2d 1334, 1337 (La. Ct. App. 1986); *Reason v. Payne*, 793 S.W.2d 471, 475 (Mo. Ct. App. 1990).

The evidence does not support finding that Ms. Murray should be deemed to be Mr. Murray's agent by ratification. The trial court found that Ms. Murray "concealed" her fraud, and we find that the evidence supports concluding that Ms. Murray concealed her activities not only from H & M Enterprises but also from Mr. Murray. Therefore, Mr. Murray could not, as a matter of law, ratify Ms. Murray's conduct because he did not use or accept the benefit of the embezzled funds knowing that they had been embezzled.

With the evidence insufficient to hold Mr. Murray liable on an agency theory, the only remaining theory for holding him liable for his wife's embezzlement is that he received the money from his wife with an intent to acquire it away from its true owner. Restatement (Second) of Torts § 229. This species of conversion imposes liability irrespective of good faith. *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d at 836; *see also* 1 Dan B. Dodds, *The Law of Torts* § 62 (2001). It has been characterized as strict liability for conversion where legal culpability does not depend on fault. 1 Fowler Harper et al., *The Law of Torts* § 2.10 (3rd ed. 1996); George Clark, *The Test of Conversion*, 21 Harv. L. Rev. 408, 409 (1908).

For Mr. Murray to be liable under this species of conversion, there must be some evidence that he knew or reasonably should have known that he was receiving and spending money that was not rightfully his to spend. *Colonia Ins. Co. v. City Nat'l Bank*, 988 F. Supp. 1242, 1252 (W.D. Ark. 1997); *Zell & Ettinger v. Berglas*, 690 N.Y.S.2d 721, 721 (App. Div. 1999) (refusing to impose liability for conversion just because a married couple shared a joint bank account). While Ms. Murray deposited the embezzled funds in the parties' joint bank account, there is little evidence that Mr. Murray spent any of these funds,[3] and there is no evidence that he knew or suspected that the money in the parties' joint account might belong to another. Proof that Mr. Murray used or spent some of the money in the bank account he owned jointly with Ms. Murray does not give rise to liability for conversion without some evidence that Mr. Murray knew or should have known that the

---

[3]Despite having eighteen months to prepare its case against Mr. Murray, H & M Enterprises could present no direct evidence that Mr. Murray spent or benefitted directly from the embezzled money. The best that the company could do was wring a concession from Mr. Murray that he must have helped spend some of the embezzled money because it was in the Murrays' joint account.

money he was spending or using was not rightfully his or his wife's. There is simply no evidence that Mr. Murray had this knowledge and without it, there is no factual basis for finding him liable to H & M Enterprises using this theory of conversion.

## IV.

We reverse the judgment against Mr. Murray and remand the case to the trial court with directions that H & M Enterprises' conversion claims against him be dismissed. We also tax the costs of this appeal to H & M Enterprises, Inc. for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUDGE